UNITED STATES of America,
Plaintiff-Appellee,

v.

Mary Josephine VASQUEZ,
Defendant-Appellant.

No. 77–3607.

United States Court of Appeals,
Ninth Circuit.

May 18, 1979.

Victor Sherman, Los Angeles, Cal., for defendant-appellant.

Andrea Sheridan Ordin, Asst. U. S. Atty., Los Angeles, Cal., on brief; Bert Deixler, Los Angeles, Cal., for plaintiff-appellee.

Before HUFSTEDLER and TANG, Circuit Judges, and SCHWARZER, District Judge.*

TANG, Circuit Judge.

Appellant appeals her conviction by a jury for violation of 18 U.S.C. § 1001. Appellant claims numerous errors but the principal issue we determine is whether a fair trial was denied because members of the jury saw during their deliberations the official court file which accidentally had been taken into the jury room. We conclude that this extrinsic prejudicial evidence denied appellant due process of law and reverse.

Appellant was originally indicted in Count I for knowingly and wilfully making false statements to United States customs officials in violation of 18 U.S.C. § 1001 and in Count II for knowingly transporting $8,850.00 into the United States without filing a report as required by 31 U.S.C. § 1101(b). During the second day of delib-

---

* Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

erations, the jury found appellant guilty of violating 18 U.S.C. § 1001 and not guilty of violating 31 U.S.C. § 1101(b). Just prior to the conclusion of the jury's deliberations, the trial judge discovered that his law clerk-bailiff had inadvertently left the official file of the court in the jury room for four hours during the first day of deliberations.

The file included all defense motions, proposed defense instructions, a stipulation and affidavits. Some of the motions and instructions had been denied by the court before trial. Other documents included inadmissible evidence that the appellant had been previously prosecuted for an offense involving contraband. Also included were certain facts underlying the search of appellant prior to her arrest. These facts had been expressly made inadmissible by the court prior to trial.

After the jury returned their verdict, the trial judge questioned the jurors about the file. It was discovered that the file had been passed around the jury room. Most jurors at least glanced at the file or leafed through it. Some admitted seeing particular documents. One juror stated he had read several pages of proposed instructions in the file. After reading these instructions, he asked for clarification of the instructions given in court. The jurors indicated, however, that they had not taken the file into consideration in reaching their verdict. Based on these disavowals, the trial judge concluded that the verdict was not tainted and denied appellant's motion for a mistrial.

The Government concedes that the file contained prejudicial information. Our inquiry is to determine whether this admittedly prejudicial extrinsic evidence prevented the defendant from receiving a fair trial. *United States v. Alessio,* 528 F.2d 1079, 1083 (9th Cir. 1976). In determining this, the actual impact upon the jury of such evidence cannot be accurately measured or ascertained. *See United States v. Pittman,* 449 F.2d 1284, 1286 (9th Cir. 1971). Consequently, it is a useless exercise even to ask jurors whether such evidence in fact affected their verdict. As stated in *Braswell v. United States,* 200 F.2d 597, 602 (5th Cir. 1952):

> The right to trial by jury comprehends a fair determination of the guilt or innocence of the accused, free from bias, passion or prejudice. * * * And where error occurs which, within the range of a reasonable possibility may have affected the verdict of a jury, appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict.

■ Our circuit has not been confronted apparently with a criminal case where extrinsic prejudicial evidence has been taken into the jury room. Other circuits, however, have addressed the issue and have generally determined that the key question is whether there exists a possibility that such information influenced the verdict.[1] Similarly, we hold that the appellant is entitled to a new trial if there existed a reasonable possibility that the extrinsic material could have affected the verdict. *Paz v. United States,* 462 F.2d 740, 745 (5th Cir. 1972); *Farese v. United States,* 428 F.2d 178, 180 (5th Cir. 1970). The basis for such a standard was correctly summarized in *Farese:*

> It is a fundamental principle that the government has the burden of establish-

---

1. Other circuits have phrased the test to be applied in a variety of ways. The second, tenth and D.C. circuits follow the view that if there is the "slightest possibility" that harm could result, then reversal is required. *United States v. Marx,* 485 F.2d 1179, 1184 (10th Cir. 1973) *cert. denied,* 416 U.S. 986, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); *Dallago v. United States,* 138 U.S. App.D.C. 276, 290, 427 F.2d 546, 560 (1969); *United States v. Adams,* 385 F.2d 548, 550–51 (2nd Cir. 1967). The seventh and eighth circuits have stated that it is sufficient to require reversal if the error "might have operated to the substantial injury of the defendant." *Osborne v. United States,* 351 F.2d 111, 119 (8th Cir. 1965); *United States v. Grady,* 185 F.2d 273, 275 (7th Cir. 1950). A series of fifth circuit cases have established that if there is a "reasonable possibility" that the error affected or prejudiced the verdicts, then reversal is required. *United States v. Howard,* 506 F.2d 865, 866 (5th Cir. 1975); *Paz v. United States,* 462 F.2d 740, 746 (5th Cir. 1972); *Farese v. United States,* 428 F.2d 178, 180 (5th Cir. 1970).

ing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial.

. . . . .

. . . Judicial control of the juror[s'] knowledge of the case pursuant to the laws of evidence is fundamental to the prevention of bias and prejudice. Our rules of evidence are designed to exclude from consideration by the jurors those facts and objects which may tend to prejudice or confuse. Evidence presented under the exclusionary rules is subject to cross-examination and rebuttal. It is therefore necessary that all evidence developed against an accused "come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472–473, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965).

*Id.* at 179–180.

In order to ascertain if there existed a reasonable possibility that the verdict would have been affected, it was first necessary to know the precise quality of the jury breach. Accordingly, the trial judge correctly held an evidentiary hearing with the jurors and other interested parties. The judge concluded that there was no taint based on the jurors' indications that the file had not influenced their verdict. But such a hearing should have been limited to ascertaining the extent, if any, that jurors saw or discussed the prejudicial extrinsic evidence or other circumstances surrounding the breach. A trial judge should not investigate the subjective effects of any such breach upon the jurors. *United States v. Howard,* 506 F.2d 865, 869 (5th Cir. 1975). He should reach a judgment of the reasonable possibility of harm on his own without the benefit of juror opinions which might negate or affirm a conclusion of actual harm.

In this case, the jurors indicated that the file had been in the jury room for four hours. Most jurors either glanced or leafed through the file. Some had reviewed the file more extensively and remembered that it contained a motion to dismiss. One juror admitted reading several pages of suggested instructions. Some could not remember what they had read but nevertheless had looked at portions of the file. When the file was not in the jury room on the second day of deliberations, the foreman specifically asked what had happened to the file. Furthermore, the file contained information highly prejudicial to the appellant which had not been brought out in trial. The possibilities are too great that at least one juror realized that the appellant had been previously prosecuted or that the court had refused to dismiss the case or that the court had refused particular instructions. In light of this, we can only conclude that there existed a reasonable possibility that the court file could have affected the verdict.

The appellant is, therefore, entitled to a new trial on Count I only of the indictment. Since we reverse on this issue, it is unnecessary to reach the other issues raised by the appellant as the claimed errors either are unlikely to recur or are without merit.

Reversed and remanded for new trial on Count I.