**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfred D. ARELLANES,
Defendant-Appellant.**

No. 84–4022.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1985.

Decided Aug. 7, 1985.

Leslie Baker, Portland, Or., for plaintiff-appellee.

Stephen A. Houze, Portland, Or., for defendant-appellant.

Before WALLACE and SNEED, Circuit Judges, and LEGGE,* District Judge.

SNEED, Circuit Judge:

The defendant appeals from the district court's denial of a motion to vacate his criminal sentence. Because the record does not conclusively show that the defendant was entitled to no relief, we remand this case for further proceedings on the defendant's claim that his guilty plea was not voluntary.

## I.

### FACTS AND PROCEEDINGS BELOW

In August 1981, the defendant was indicted in the District of Oregon for violations of federal narcotics laws. On the day that he was to go to trial, he was served with another indictment from the Western District of Missouri charging him with more drug-related crimes. On September 29, the Assistant U.S. Attorney and defendant's counsel reached a tentative plea agreement that would dispose of both cases. The terms of the agreement were embodied in a letter from the Assistant United States Attorney to the defendant's counsel which promised, in part, that in exchange for the defendant's guilty pleas to both charges, the "Government would not take a position as to whether the sentences imposed upon your client as a result of his guilty pleas to the charges against him, should be consecutive or concurrent. The Government will stand mute as to the question of whether any sentence imposed

* Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation.

on each of those two counts would be consecutive or concurrent." [1]  E.R. at 83.

On September 30, the defendant pleaded guilty to the charges contained in both indictments.  During his plea hearing, the defendant was asked about his general understanding of the plea agreement.  He answered: "Essentially, as I understand it, they [the government] will not—will move to withdraw the second offender motion or notice and he [the Assistant U.S. Attorney] will not make any specific recommendation as to sentence."  E.R. at 51.  For his part, the Assistant U.S. Attorney explained that in return for the guilty pleas, the "Government would not take a position as to *whether* a sentence is imposed upon [the defendant] as a result of his guilty plea in the two indictments before the Court, and will not take a position as to whether those sentences shall be consecutive or concurrent."  E.R. at 52–53 (emphasis added).  Obviously these responses do not mesh precisely.

During the hearing, the defendant indicated that he had reviewed "that letter" and that it was his understanding "that that is the plea agreement."  He confirmed that he knew of "no other promise or no other agreement, other than that set forth by [the Assistant U.S. Attorney], and that set forth in the letter."  E.R. at 53.

The district court accepted the guilty pleas to both charges.  Through his counsel, the defendant asked for a sentence of "somewhat under ten years."  Before sentencing the defendant, the court considered not only a presentence report but also a "letter of recommendation" written by the Assistant U.S. Attorney.  The letter recommended that the defendant be sentenced to fifteen years in prison and, as a "self-admitted millionaire," be fined $25,000.  E.R. at 24–25.

In November 1982, the defendant was sentenced to two ten-year prison terms, to run concurrently, and was fined $25,000.  He was also sentenced to a special parole term of ten years.  E.R. at 78–79.  The district judge said that if the defendant filed a financial statement with the court he would reconsider the fine.  The record does not show that the defendant ever filed the statement.

In September 1983, the defendant filed a motion to vacate the sentence.  *See* 28 U.S.C. § 2255 (1982).  In the memorandum supporting his motion, the defendant argued that his "guilty plea was not voluntary because it was based upon an agreement which the government did not follow," and that the Assistant U.S. Attorney's letter to the district court was factually inaccurate.  Specifically, the defendant claimed that the government agreed "to take no position respecting the sentence to be imposed," but in fact "at the last moment before imposition of sentence, it submitted a sentencing memorandum recommending a sentence of fifteen … years plus a fine."  E.R. at 16.

In its answer to the defendant's motion, the government argued that the plea agreement of September 29 did not prevent it from submitting a letter of recommendation to the district court.  The government

1.  The relevant portion of the September 29 letter reads:

[I]n exchange for your client's plea of guilty to … the Indictment facing him in the District of Oregon, … and his plea … to an Indictment pending against him in the Western District of Missouri … the Government would take the following positions.  First, it would recommend that if a sentence of incarceration were imposed on the [Missouri] charge, that your client be sentenced to a special parole term of life; second, that any sentence imposed on your client be imposed pursuant to the provisions of 18 U.S.C. § 4205(a); third, that the Government will reserve the right to make a full factual statement to the Parole and Probation Office in this District for their use in preparing a presentence investigation on your client; fourth, the Government would reserve the right to take a position on any Rule 35 or Section 2255 petition later to be filed by your client; fifth, the Government would not take a position as to whether the sentences imposed upon your client as a result of his guilty pleas to the charges against him, should be consecutive or concurrent.  The Government will stand mute as to the question of whether any sentence imposed on each of those two counts would be consecutive or concurrent.

E.R. at 83.

also contended that even if it had breached the plea agreement, the defendant suffered no prejudice because the district court did not rely on its recommendations.

In his traverse to the government's answer, the defendant claimed that he had never seen the September 29 letter until the government filed its answer to his motion to vacate the sentence. He argued that in any case the statements made at the plea hearing were "what [were] most important to [me] ... [and I] heard nothing which was contrary to [my] understanding of the plea agreement". E.R. at 87.

In January 1984, the magistrate to whom the defendant's motion had been referred found that no factual issues were in dispute and therefore that the defendant was not entitled to an evidentiary hearing on his motion. He recommended that the defendant's motion to vacate sentence be dismissed.

In his objections to the magistrate's findings and recommendations, the defendant noted that the magistrate had failed to consider the statements made during the hearing. Because those statements were inconsistent with the September 29 letter, the defendant said that an evidentiary hearing was required to determine whether his guilty plea was voluntary. Finally, and for the first time, the defendant argued that the special parole term to which he was sentenced violated his constitutional right to due process of law.

On May 23, 1984, the district court adopted the magistrate's findings and recommendations and dismissed the defendant's motion. The district court did not address the defendant's constitutional argument. From that order of dismissal, the defendant now appeals.

## II.

### ISSUES PROPERLY BEFORE THE COURT

■ The government contends that on appeal the defendant cannot argue that the district court failed to develop adequately the terms of the plea agreement because he failed to raise that argument below. It is true that in the district court the defendant specifically disclaimed reliance on the argument "that the [district] court failed in its responsibility of developing satisfactorily the terms of the plea agreement." On this appeal, however, the defendant argues that the breach issue has been "transformed instead [into the issue of the] failure of the court to satisfactorily develop the terms of the plea agreement" because it was only after he filed his motion to vacate that he saw a copy of the September 29 letter. Defendant's Brief on Appeal at 6. Essentially, the defendant is saying that before he knew of the September 29 letter, he believed the government had simply reneged on what he took to be its unambiguous promise not to recommend a particular sentence. After he saw the letter he realized that the terms of the plea agreement were ambiguous and had no choice but to change the form of his argument. In either case, however, the ultimate issue is the same: whether the defendant's pleas of guilty were voluntary. It is of only secondary importance whether the pleas are claimed to be involuntary because they were entered in exchange for a promise that the government simply failed to keep or whether it is because the defendant did not understand what the government was promising. The defendant's argument that his guilty pleas were not voluntary is properly before this court.

■ The defendant also argues on this appeal that his sentence was based on inaccurate and unreliable information, i.e., the government's claim that the defendant's heroin sales had made him a millionaire. The government argues that this issue is not properly before the court because it was not raised below. We disagree. The defendant's motion in the district court argues that the government had promised (or that he had understood the government to have promised) not to recommend a particular sentence. In fact, however, the government did recommend that a fine be imposed on the defendant. The defendant's motion below expressly objected to

that recommendation. *See* E.R. at 8–9. This issue too is properly before the court.

■ Finally, the government argues that the defendant's attack on the constitutionality of the special parole term provision of 21 U.S.C. § 841 (1982) is not properly before the court. It is true that the defendant did not raise this issue until May 1984, when he filed a motion for leave to supplement his original motion. The district court, however, granted the defendant's motion to supplement his original motion and the government had an opportunity to respond to the defendant's constitutional arguments. *See* E.R. at 97, 108–09. This issue also is properly before the court.

## III.

## DISCUSSION

A. *Whether the defendant is entitled to an evidentiary hearing on his claim that the district court failed to adequately develop the terms of the plea agreement.*

We review the district court's factual findings on a defendant's section 2255 motion under the "clearly erroneous" standard. *Gano v. United States,* 705 F.2d 1136, 1137 (9th Cir.1983). Although we acknowledge this is a difficult case, we find that the magistrate's finding that there were no factual issues in dispute, later adopted by the district court, was clearly erroneous. We therefore remand this case for an evidentiary hearing.

A defendant is entitled to an evidentiary hearing on his section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the [defendant] is entitled to no relief." 28 U.S.C. § 2255 (1982); *see Sasser v. United States,* 452 F.2d 1104, 1105 (9th Cir.1972). In this case, because the magistrate found that the plea agreement (which it took to be embodied exclusively in the September 29 letter) did not prevent the government from recommending a particular sentence, he concluded that an evidentiary hearing was not required.

The magistrate's finding, however, ignores the essence of the defendant's assertion. The defendant did not contend that the September 29 letter was ambiguous. No doubt the magistrate was correct when he concluded that the letter itself did not preclude the government from recommending a particular sentence. The defendant's contention, however, was that he did not understand that the September 29 letter contained all the terms of the plea agreement. This contention is supported by more than "his supplemental recollections which are not contained in the record," as the district court erroneously found to be the case. At the plea hearing, the defendant said that he believed that the government had agreed "not [to] make any specific recommendation as to sentence." E.R. at 51. The government did not dispute the defendant's claim. Indeed, the Assistant U.S. Attorney himself said that the "Government would not take a position as to whether a sentence is imposed upon [the defendant] as a result of his guilty plea in the two indictments." E.R. at 52–53.

■ Of course, these comments do not conclusively establish that the government breached the plea agreement or that its terms are other than those found to be the case by the district court. But it does, in our opinion, create enough uncertainty to justify an evidentiary hearing on the defendant's claim. Rule 11 of the Federal Rules of Criminal Procedure requires that the district court "develop satisfactorily the terms of a plea bargain." *United States v. Arnett,* 628 F.2d 1162, 1164 (9th Cir.1979). Where, as here, there is a manifest contradiction between statements made at a plea hearing and the written embodiment of the plea agreement, an evidentiary hearing is appropriate to determine what the parties to the agreement reasonably understood to be its terms. "[D]isputes over terms of a plea bargain can be resolved only by study of the facts of each case." *Id.* at 1165 n. 4.

Finally, our conclusion is strengthened by the fact that the defendant suffers from an acute hearing loss. The record reveals that several times during the plea hearing

he simply could not understand what the district judge was saying to him. Even if the plea agreement had been explained in unambiguous language, we are not confident that the defendant would have heard all of its terms.

B. *Whether the defendant is entitled to an evidentiary hearing on his claim that his sentence was based on false or unreliable information.*

In the government's letter of recommendation to the district court, it alleged that it had tape recordings of conversations in which the defendant boasted that his career as a heroin dealer had made him a millionaire. The government therefore recommended that the defendant be fined $25,000. The defendant denies that he is a millionaire and says that the government has no recordings of his alleged boasting.

Again, the defendant is entitled to an evidentiary hearing on his claim unless his "motion and the files and records of the case conclusively show that [he] is entitled to no relief...." 28 U.S.C. § 2255 (1982); *see Sasser*, 452 F.2d at 1105.

■ When a district court "relies on materially false or unreliable information in sentencing a defendant, the defendant's due process rights are violated." *United States v. Ruster*, 712 F.2d 409, 412 (9th Cir.1983). Our cases, however, require a district court to hold an evidentiary hearing "only if the challenged information is both false or unreliable, *and* demonstrably made the basis for the sentence." *Id.* (citing *Farrow v. United States*, 580 F.2d 1339, 1359–60 (9th Cir.1978) (en banc) (emphasis added)).

Here, the district judge clearly was skeptical of the government's claim. He said that "[t]here is no indication before the Court other than the Government's speculation, and your [the defendant's counsel's] statements and [the defendant's] statement as to whether or not wealth exists." Moreover, the district judge invited the defendant to file a financial statement so that the court could reconsider the imposition of the fine. The defendant apparently never filed

the statement. Any prejudice that he might have suffered because of the district court's reliance on the government's information is his own fault. He had the opportunity to disprove the allegations and let it pass. *Cf. Farrow*, 580 F.2d at 1359 (denying evidentiary hearing where defendant had opportunity to rebut government's information at sentencing hearing).

■ The defendant, however, may challenge the use that was made of his financial position, whatever that position might be. We have held that the defendant is entitled to an evidentiary hearing on his claim that he did not fully understand the terms of the plea agreement. At that hearing, he may attempt to show that he believed that the government had agreed to provide the district judge with no information at all relevant to the imposition of a fine or its appropriate amount.

C. *Whether the special parole term provision of 21 U.S.C. § 841 is unconstitutional.*

The statute that the defendant challenges in this case was designed to allow greater flexibility in the imposition of restraints against those convicted of drug charges. In certain, specified drug cases, the statute requires the district court to impose a "special parole term" in addition to any sentence of incarceration or imposition of fine. For first offenders, the special parole term must be "of at least 3 years in addition to such term of imprisonment." For repeat offenders, the special parole term must last at least six years. The statute does not set an upper limit on the special parole term. *See* 21 U.S.C. § 841(b)(1)(B) (1982). Finally, subsection (c) of section 841 provides that if the special parole term is revoked, "the original term of imprisonment shall be increased by the period of the special parole term." 21 U.S.C. § 841(c) (1982).

The defendant argues that the special parole provision is unconstitutional because it (1) is impermissibly vague to the extent that it does not specify the maximum possi-

ble length of the parole term; and (2) unlawfully delegates the legislative power to establish penalties for violations of the criminal law to the judicial branch.

Only one case, *United States v. Tebha*, 578 F.Supp. 1398 (N.D.Cal.1984), supports the defendant's position. That case held that the special parole term provision of 21 U.S.C. § 841 is "invalid both on the ground of ambiguity and on the ground of failure to indicate the precise maximum penalty for any violation of the special parole; and each of these two grounds is a denial of due process of law guaranteed by the Fifth Amendment." *Tebha*, 578 F.Supp. at 1399.

All other courts that have addressed the issue, however, have upheld the special parole term provision. These decisions interpret the statute to authorize a special parole term of as long as life. This vast amount of judicial discretion in the imposition of special parole terms has not been found to violate the due process clause. As the Tenth Circuit has convincingly explained: "Leaving the determination of maximum sentences to the court is not uncommon ... and we are convinced that no unlawful delegation of legislative power is involved. Nor is the statute void for vagueness because of the broad range of the sentencing power." *United States v. Jones*, 540 F.2d 465, 468 (10th Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977). *Accord, Yates v. United States*, 753 F.2d 70, 71 (8th Cir.) (per curiam), *cert. denied*, — U.S. —, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985); *United States v. Hernandez*, 750 F.2d 1256, 1260 (5th Cir.1985); *United States v. Walden*, 578 F.2d 966, 972 (3d Cir.1978), *cert. denied*, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Sims*, 529 F.2d 10, 12 (8th Cir.1976) (per curiam); *Ugland v. United States*, 596 F.Supp. 156, 157–59 (D.N.J.1984) (rejecting *Tebha*); *United States v. Lockley*, 590 F.Supp. 1215, 1217 (N.D.Ga.1984) (rejecting *Tebha*); *United States v. Davi*, 588 F.Supp. 91 (E.D.N.Y.1984) (rejecting *Tebha*).

■ We decline to follow *Tebha* and are persuaded by the great weight of judicial authority that the special parole term provision of 21 U.S.C. § 841 offends no constitutional guarantee.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.