**UNITED STATES of America,
Plaintiff-Appellee,
Cross-Appellant,**

v.

**Mark I. TEBHA, Defendant-Appellant,
Cross-Appellee.**

Nos. 84–1029, 84–1126.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1984.

Decided Sept. 10, 1985.

Jeffrey Lawrence, San Francisco, Cal., for plaintiff-appellee, cross-appellant.

Richard Mazer and Arlene West, Oakland, Cal., for defendant-appellant, cross-appellee.

Before SCHROEDER, FLETCHER and CANBY, Circuit Judges.

FLETCHER, Circuit Judge:

Mark Tebha appeals his conviction for possession of heroin with intent to distribute. 21 U.S.C. § 841(a)(1) (1982). We reverse. The government cross-appeals, contending the trial court erred in refusing to impose a special parole term under 21 U.S.C. § 841(b)(1)(A) (1982). We agree that the district court erred in this regard.

## I. FACTS AND PROCEEDINGS BELOW

In August 1983, two packages were mailed into the United States addressed to "John Smith," at the address of Tebha's store in Berkeley, California. The packages looked like rolled-up magazines and bore return addresses in the United Arab Emirates. Customs agents in New York, conducting routine mail inspections, opened the packages and found approximately one kilogram of heroin inside (approximately one-half kilogram in each).

Postal inspectors repackaged the parcels, substituting a sugar substance for all but one gram of the heroin in each parcel. They wired the packages with a beeper device, designed to go off if the packages were opened. Postal authorities and local police then set up a "controlled delivery" to Tebha's store. Several DEA agents waited outside the store while the regular postman delivered the packages inside.

An employee at the store, Helen Phillips, accepted the packages, even though she did not know a "John Smith." Shortly after accepting the parcels, Phillips took them upstairs to Tebha, who responded non-committally when she asked him whether he knew any "John Smith." He told her to leave the packages on the table where he was working on a bank deposit.

A short time later, the beeper went off, and several DEA agents entered the store and confronted Tebha. One agent twice asked Tebha where the parcels were, to which he responded, "What parcels?" When the agent said, "The two parcels that were delivered within the last half hour," Tebha replied, "Oh, it's in the back."

Tebha then led the agents to a back office on the mezzanine level of the store, where he had tossed the parcels onto the top shelf of a bookcase. The agents noticed that one of the bags of powder protruded from the end of one of the parcels. Tebha stated that he had not opened the parcels but had received them partially opened. Tebha also said that he intended to return the parcels in the next day's mail.

On the shelf next to the parcels, the agents found a small scale. A government chemist later examined the scale and found minute traces of heroin on it.

## II. DISCUSSION

### A. Tebha's Appeal

Tebha appeals his conviction on a number of different grounds. He challenges several jury instructions given at his trial, the sufficiency of the evidence, and the submission of an exhibit to the jury room. We do not consider the adequacy of the jury instructions because we agree with Tebha that the jury improperly was allowed to consider an exhibit that was not admitted in evidence.

#### 1. Improper Admission of Exhibit

At the outset of the trial, the parties stipulated to the admissibility of all exhibits to be offered. During the trial, however, the court expressed concern about the government's efforts to introduce evidence concerning the contents of the parcels when they first arrived in the United States. The court stated:

Is there anything to show that at that stage the defendant know [sic] anything whatsoever about the package.... [T]here's no evidence so far that the defendant knew anything about this package before September 1, [the date the parcels were delivered to Tebha's store] and its condition before that is irrelevant and I so rule.

During examination of the DEA chemist which followed, the government attorney asked about the purity of the heroin. The chemist mentioned a report he had prepared, exhibit 11, which contained a chemical analysis of the heroin. The government attorney sought to show the exhibit to the jury, defense counsel objected, and the court sustained the objection. The government contends Tebha's counsel objected only to the exhibit being shown to the jury, not to its admissibility. But Tebha's counsel argued that the exhibit should be excluded because it was based on chemical tests performed on the heroin that had been removed from the packages before delivery to Tebha. Although the court merely stated, "I sustain the objection," in light of its earlier rulings and the arguments of counsel, it is clear the court intended to exclude exhibit 11.[1]

When the jury retired to deliberate, however, the court clerk gave the jury exhibit 11 along with the other, properly admitted, exhibits. Exhibit 11 showed that the heroin was 95–96% pure.

In *United States v. Vasquez*, 597 F.2d 192 (9th Cir.1979), we stated that when information not placed in evidence reaches the jury during its deliberations, the defendant is entitled to a new trial if "there exist[ed] a reasonable possibility that the extrinsic material could have affected the verdict." *Id.* at 193; *see United States v. North*, 746 F.2d 627, 632 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1773, 84 L.Ed.2d 832 (1985). In *Gibson v. Clanon*, 633 F.2d 851 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981), we concluded that the *Vasquez* test is compelled by constitutional considerations. *Id.* at 854. We said, "[T]he proper standard to be applied is whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Id.* at 855; *see also United States v. Bagley*, 641 F.2d 1235, 1240–41 (9th Cir.), *cert. denied,* 454 U.S. 942, 102 S.Ct. 480, 70 L.Ed.2d 251 (1981).

■ We cannot conclude that the error here was harmless beyond a reasonable doubt. Exhibit 11 was the only evidence the government offered concerning the purity of the heroin. Purity was relevant to the issue of whether Tebha intended to "cut" the heroin and distribute it to others. With knowledge that the heroin was 95–96% pure, the jury could have inferred that Tebha was a major drug supplier. This could have influenced the jury to convict.[2]

Because the exhibit was prejudicial to Tebha and because the other evidence against him was far from overwhelming,[3] we conclude that there is a reasonable possibility that the contents of exhibit 11 affected the verdict. Accordingly, Tebha is entitled to a new trial.

### 2. Sufficiency of the Evidence

Although we reverse for improper consideration of extrinsic evidence by the jury,

---

1. Under these circumstances, the court's rejection of exhibit 11 vitiated the stipulation at least as to that exhibit.

2. We do not decide whether there would have been sufficient evidence of intent to distribute without evidence of the purity of the heroin. It may be that possession of a large enough quantity of drugs by itself would be sufficient to support an inference of intent to distribute. *See United States v. Brown*, 562 F.2d 1144, 1151 (9th Cir.1977) (dicta). Regardless of whether the jury could have convicted without evidence of purity, that evidence certainly could have influenced the jury's impression of the degree of Tebha's drug dealings, and in that sense the evidence was very prejudicial to him.

Nor do we decide whether exhibit 11 was properly excluded, since the government argues on appeal only that the district court *did not* exclude the exhibit. The government does not argue that the exhibit *should not* have been excluded, and so, we do not reach that issue.

3. *See infra* note 4 and accompanying text.

we must still address Tebha's sufficiency claim. *United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 2330, 85 L.Ed.2d 847 (1985). We view the evidence in a light most favorable to the government and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Ospina*, 739 F.2d 448, 450 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 262, 83 L.Ed.2d 198 (1984).

The question here is not whether Tebha possessed the heroin, but whether he knowingly possessed it and intended to distribute it. The evidence was sufficient for a reasonable jury to conclude that he did.

■ A reasonable jury could have found that Tebha knowingly possessed the heroin. First, there is the fact that one of the parcels was opened when DEA agents arrived on the scene. Tebha explained that he merely pushed on one end of the parcel and the other end fell open. The evidence showed, however, that the parcels were securely sealed with clear tape at both ends. A reasonable jury could conclude that Tebha opened the package intentionally, rather than accidentally as he claimed.

Second, Tebha's story changed somewhat from the time of his arrest to his testimony at trial. Tebha told the DEA agents who arrested him that he had received the parcels partially opened. At trial Tebha stated that he did "open" one of the packages. It was for the jury to consider the plausibility of Tebha's testimony and any inconsistencies between it and his statements when he was arrested, as recounted by the DEA

agents. *See United States v. Valdovinos*, 558 F.2d 531, 534 (9th Cir.1977). A reasonable jury could have considered these inconsistencies as some evidence of guilt.

■ The scale with traces of heroin on it, found on the top shelf next to the parcels, was admissible to show intent or absence of mistake. Fed.R.Evid. 404(b); *see United States v. Lopez-Martinez*, 725 F.2d 471, 475–76 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984). From this evidence, the jury was entitled to infer that Tebha had possessed heroin before and intended to possess the heroin he received in the mail. *See United States v. Rohrer*, 708 F.2d 429, 435 (9th Cir.1983); *United States v. Glenn*, 667 F.2d 1269, 1271 (9th Cir.1982).[4]

■ A reasonable jury also could have found that Tebha intended to distribute the heroin. The scale was evidence of intent to distribute as well as to possess. *See United States v. Glenn*, 667 F.2d at 1271. The jury also could have inferred intent to distribute from the quantity of white powder that looked like heroin (approximately a kilo) contained in the packages. *See United States v. Smith*, 595 F.2d 1176, 1180–81 (9th Cir.1979). The jury was entitled to infer intent to distribute in light of what it concluded Tebha thought was in the packages. *See United States v. Quijada*, 588 F.2d 1253, 1255 (9th Cir.1978).

Thus, the evidence, considered as a whole, was sufficient to convict Tebha.

*B. The Government's Cross-Appeal*

■ The trial court sentenced Tebha to seven years imprisonment. The government moved to correct that sentence, Fed.

---

**4.** Without the evidence of the scale, this would be a much more difficult case. The scale provides the corroboration necessary to find knowing possession. *Compare United States v. Moler*, 460 F.2d 1273, 1274 (9th Cir.1972) (per curiam) (possession of unopened package of marijuana addressed to unknown third party in care of defendant's business held not sufficient to sustain conviction of possession with intent to distribute), *with United States v. Daniels*, 549 F.2d 665, 668–69 (9th Cir.1977) (possession of unopened package containing marijuana ad-

dressed to unknown third party at defendant's address, together with presence of similar package found on defendant's premises and other marijuana, held sufficient to sustain conviction); *and United States v. Koua Thao*, 712 F.2d 369, 371 (8th Cir.1983) (possession of package containing opium and addressed to name similar to defendant's, together with defendant's apparent excitement to receive package, fact that defendant opened package shortly after receipt, and presence of other opium on premises, held sufficient to sustain conviction).

R.Crim.P. 35(a), requesting the court to impose in addition the mandatory special parole term of at least three years as provided by 21 U.S.C. § 841(b)(1)(A).[5] The court refused to modify the sentence and *sua sponte* held that the special parole provision was unconstitutional. *United States v. Tebha,* 578 F.Supp. 1398, 1399 (N.D.Cal.1984). We have since rejected the district court's proposition that the mandatory special parole term is unconstitutional. *United States v. Arellanes,* 767 F.2d 1353 (9th Cir.1985). *Arellanes* controls here, and fully sustains the government's position in its cross-appeal.

### III. CONCLUSION

We reverse Tebha's conviction. If he is retried and convicted, the trial court will be obligated to impose a mandatory special parole term of at least three years.

REVERSED.

---

**5.** Former section 841(b)(1)(A) provided in pertinent part:

Any sentence imposing a term of imprisonment under this paragraph shall ... impose a special parole term of at least 3 years in addition to such term of imprisonment....

21 U.S.C. § 841(b)(1)(A).

Section 841 was amended in October of last year, Pub.L. No. 98–473, Title II, §§ 502, 503, 98 Stat. 2068, 2070 (1984), and the special parole provision is now contained in subparagraph (b)(1)(B). The 1984 amendments have no bearing on this appeal. In this opinion, we cite to the former version of the statute.