**Michael BORJA, Petitioner,**

v.

**K.W. PRUNTY, et al., Defendants.**

**Civ. No. 93–0748.**

United States District Court,
S.D. California.

Oct. 26, 1994.

---

Michael Borja, in pro per.

John T. Swan, Deputy Atty. Gen., State of Cal., San Diego, CA, for defendants.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

RHOADES, District Judge.

Pursuant to 28 U.S.C. § 2254, Michael Borja petitions the Court for a writ of habeas corpus claiming he was denied his right to a fair trial because the jury was inadvertently given material showing his prior arrest history. For the reasons stated below, Borja's petition is DENIED.

### I. *BACKGROUND*

#### A. *Procedural History*

On April 3, 1990, Petitioner was charged with first degree residential burglary (Cal.Penal Code §§ 459–60). The government also alleged that Petitioner had a prior serious felony conviction (Cal.Penal Code §§ 667(a), 1192.7(c)(3)). The state trial court granted Petitioner's motion to bifurcate with regard to the prior felony conviction. A jury trial on the burglary charge began on July 6, 1990. The jury found Petitioner guilty of first degree burglary on July 11, 1990. Opp'n at 4.

Following return of the verdict, Petitioner waived jury trial on the allegation of the prior felony conviction. Approximately one-half hour after adjournment, the court learned that the jury had obtained information from the fingerprint cards unrelated to the case. The reverse side of the fingerprint cards contained information regarding Petitioner's prior arrests. The trial court took testimony that same morning regarding the jurors' receipt of unauthorized evidence. Opp'n at 5.

On August 17, 1990, the trial court denied Petitioner's motion for a new trial based on jury misconduct. The court then conducted a bench trial on the prior felony conviction allegation and found Petitioner guilty. The trial court sentenced Petitioner to four years in state prison on the burglary charge and to

a consecutive five years in state prison on the prior conviction finding. Opp'n at 5.

On April 17, 1992, the California Court of Appeal, Fourth Appellate District, affirmed Petitioner's conviction. Opp'n at 5.

Petitioner filed a petition for review with the California Supreme Court on May 27, 1992, alleging denial of his federal constitutional right to a fair trial based on the jury's receipt of extraneous material. The California Supreme Court denied petition for review on July 8, 1992. Opp'n at 5–6.

### B. *Substantive Facts*

The government presented the following evidence at Petitioner's trial. On September 19, 1989, Neil Becker heard noises coming from the house of his neighbor, Barbara Dresden. Upon investigation, he saw that the screen on one of Dresden's front windows was open at the bottom and that the window itself was open. When Becker looked inside Dresden's house, he could see that the bedroom was in disarray. Opp'n at 6.

Becker then went to the back of the building, where he saw an unfamiliar green station wagon parked in the back alley. There were two men in the car and two men standing by a back gate. Becker then telephoned the police department, giving them a description of the vehicle and its license plate number. When Becker returned, the two men by the back gate had disappeared. The station wagon then drove away. Opp'n at 6–7.

Becker noticed that the back door to Dresden's house was open and some of Dresden's belongings were near the back steps. He did not see anyone inside. Before the police arrived, the station wagon, with the two men still inside, returned and slowly cruised by the Dresden house. This occurred again after the police arrived, at which point an officer followed the vehicle and stopped it. Petitioner's sixteen-year-old brother, Joseph Borja, and another man were inside the vehicle. Becker identified them as the two men he had seen in the car when it was parked in the alley and when it had passed by the house the first time. Upon searching the vehicle, the officer found five $2 bills on the floorboard below where Joseph Borja had been sitting. Opp'n at 7–8.

Alerted by a telephone call, Dresden returned home. Dresden discovered most of her jewelry was missing, as well as her commemorative coin collection which included $2 bills. She also identified the items on the back steps as her own. Opp'n at 8.

Petitioner's thumb print was lifted from the outside of the glass of the open window at the front of Dresden's house. This window was covered by a screen that Dresden testified had been in place the entire time she had lived in the house. Opp'n at 8–9.

Petitioner did not testify at trial. Petitioner's girlfriend, however, testified on his behalf. As an explanation for the fingerprint, she stated that on the day of the burglary she and Petitioner were out looking for an apartment. While apartment hunting, she explained, Petitioner got out of the car and went up to the homes to look at them. The area in which Petitioner's girlfriend claims that they looked at houses is near the Dresden residence. Opp'n at 8–9, 17.

## II. *PETITIONER HAS A CONSTITUTIONAL RIGHT TO AN IMPARTIAL JURY*

State defendants have a federal constitutional right to an impartial jury. This right requires that the jury consider only evidence that is properly presented in open court. *Bayramoglu v. Estelle,* 806 F.2d 880, 887 (9th Cir.1986) (citing *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 549–50, 13 L.Ed.2d 424 (1966)). When the jury considers facts not entered into evidence, a defendant is effectively denied the rights of confrontation, cross-examination, and the assistance of counsel with regard to that extraneous evidence. *Gibson v. Clanon,* 633 F.2d 851, 854 (9th Cir.1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981).

### A. *Standard on Collateral Review*

Until recently, the federal courts applied the same standard for determining reversible constitutional error in cases on direct review as they applied in cases on collateral review, or habeas corpus. That standard, based on the United States Supreme Court's holding

in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), was whether the error was "harmless beyond a reasonable doubt." In the context of jury misconduct, the test as applied is whether there is "a reasonable possibility that the extrinsic material *could* have affected the verdict." *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir.1988) (holding that the test is applicable on a collateral review of state court judgments, as well as in federal cases on direct appeal). *See also Hughes v. Borg*, 898 F.2d 695, 700 (9th Cir.1990); *Gibson*, 633 F.2d at 855.

In 1993, however, the United States Supreme Court distinguished collateral review from direct review in *Brecht v. Abrahamson*, —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In *Brecht*, the Court declined to apply the *Chapman* harmless error standard to cases on collateral review. Instead, the Court held that the standard for determining whether habeas corpus relief must be granted is whether the trial error had "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at ——, 113 S.Ct. at 1718 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).[1]

In adopting the lower standard for collateral review, the Court reasoned that considerations of comity, federalism, and finality required a lesser standard once the conviction survives direct review within the state court system.

■ Thus, when a federal court considers a petitioner's writ for habeas corpus based on the fact that the trial jury considered extraneous material, the defendant is entitled to a new trial if the court finds that the trial error had "substantial and injurious effect or influence in determining the jury's verdict." Jus-

tice Stevens, in his *Brecht* concurrence, notes that under both *Kotteakos* and the statutory rule for reviewing trial court errors, the burden of proof continues to rest with the prosecution. *Id.* at ——, 113 S.Ct. at 1723.

### B. *Receipt of Extraneous Material*

■ Respondents contend that there was no trial error. They argue that, because the fingerprint cards were properly admitted, Petitioner's arrest history, on the reverse side, was also properly admitted.

No federal court has ever held that evidence is properly admitted simply because it is *attached to* properly admitted material. Such reasoning would ignore the very purpose of the rules of evidence. In the present case, it is not the physical objects themselves, i.e., the fingerprint cards, that are at issue. Rather, it is the information concerning Petitioner's arrest history on the back of the fingerprint cards that is extraneous and improper. Because Petitioner's arrest history was not formally introduced into evidence, information regarding that history is extraneous material. *See Hughes*, 898 F.2d at 700.

Upon learning of the possible receipt of extraneous material by the jury, the trial court held an evidentiary hearing to determine the precise nature of the information received by the jury. The trial court questioned each juror individually regarding whether the juror viewed the alleged extraneous material or heard remarks about the material. The record shows that nearly every juror was in some way exposed to the material. (R. at 272–324.) However, the trial court denied Petitioner's motion for a new trial, stating:

> Trial error occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence presented in order to determine the effect it had on trial.
>
> *Id.* (internal quotations omitted). The Court contrasted trial error with structural defects of the trial, such as deprivation of the right to counsel, which require automatic reversal of the conviction because they infect the entire trial process. *Id.*

1. In *Brecht*, the Court made specific reference to "*Doyle* error," which is the improper use for impeachment purposes of a petitioner's post-*Miranda* silence, in violation of due process under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The Court noted that "*Doyle* error fits squarely into the category of constitutional violations which we have characterized as trial error." *Brecht*, —— U.S. ——, 113 S.Ct. at 1717 (internal quotations omitted). The Court continued:

I'm not satisfied that this constitutes evidence received out of court within the meaning of [Penal Code section] 1181 sub[division] 2. If it does, I think there's been no showing of prejudice to the defendant which would justify granting a new trial. The motion for new trial is denied.

(R. IV at 5 (August 17, 1990).) Petitioner then filed a direct appeal of the trial court's ruling. The California Court of Appeal, Fourth Appellate District, Division One (No. D013017), affirmed Petitioner's conviction.[2]

■ Under *Hughes,* however, receipt by the jury of material that was not admitted into evidence is an error of constitutional dimension, which in some cases requires a new trial. *Hughes,* 898 F.2d at 700.

### C. *Substantial and Injurious Effect*

Once established that the jury received extraneous material, the court must then determine whether "the error had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* —— U.S. ——, 113 S.Ct. at 1722.

#### 1. Case Law Examining the Effect of Extraneous Evidence

In *Brecht,* the error at issue was the prosecutor's improper reference to the defendant's post-*Miranda* silence. The Court found that where the references were infrequent, and combined with extensive and permissible references to the defendant's pre-*Miranda* silence, the references were "in effect, cumulative." *Id.* —— U.S. at ——, 113 S.Ct. at 1722. In addition, the Court found that the state's evidence was, "if not overwhelming, certainly weighty." *Id.* In light of this, the Court

held that the *Doyle* error which occurred at the petitioner's trial did not "substantially influence" the jury's verdict. *Id.*

The Ninth Circuit however, in the wake of *Brecht,* held that extraneous information regarding a defendant's prior criminal history is still grounds for a new trial. In *Jeffries v. Blodgett,* 5 F.3d 1180 (9th Cir.1993), the only post-*Brecht* decision considering this issue in the Ninth Circuit, the Ninth Circuit reversed a district court's denial of Jeffries' petition for habeas corpus. The court held that where one juror informed two other jurors that the defendant had a conviction for armed robbery, the information would have had a substantial and injurious effect or influence on the verdict, notwithstanding the averments of the two jurors that the information did not affect their decision. *Id.* at 1191. The *Jeffries* court remanded the matter to the district court to hold an evidentiary hearing and determine whether the allegations of juror misconduct were true.[3]

In *Jeffries,* the Ninth Circuit took note of the new United States Supreme Court standard on collateral review, but also quoted a passage directly from *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), which warned that:

> The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Jeffries,* 5 F.3d at 1190 (quoting *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248). In addi-

---

**2.** The state appellate court, citing the case of *People v. Cooper,* 53 Cal.3d 771, 281 Cal.Rptr. 90, 809 P.2d 865 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 664, 116 L.Ed.2d 755 (1991), held that the jury's inadvertent receipt of extraneous material did not constitute juror misconduct.

In *Cooper,* the California Supreme Court held that when "a jury innocently considers evidence that it was inadvertently given, there is no misconduct." *Id.* at 836, 281 Cal.Rptr. 90, 809 P.2d 865. The Court concluded that such an error is akin to an erroneous evidentiary ruling, and "is reversible only if it is reasonably probable that a result more favorable to the defendant would

have been reached in the absence of the error." *Id.*

Finding that "no other verdict was reasonably probable in this situation," the state appellate court affirmed Petitioner's conviction.

**3.** In ruling on the matter, the district court had relied on affidavits submitted by the jurors. Based on their contentions that they were not affected by the extraneous evidence, the district court denied the claim. Testimony as to the subjective effects of extraneous information is, however, outside the relevant scope of inquiry of a reviewing court. *United States v. Bagnariol,* 665 F.2d 877 (9th Cir.1981).

tion, the *Jeffries* court relied extensively on the analytic structure outlined in *Dickson v. Sullivan*, 849 F.2d 403 (9th Cir.1988), a pre-*Brecht* case.

In *Dickson v. Sullivan*, the Ninth Circuit reversed a district court's denial of a petition for habeas corpus based on jury misconduct. The district court found that a deputy sheriff's comment to two jurors that a defendant had "done something like this before" was not likely to have influenced the verdict because the statement was made several days before the jurors retired to deliberate, and neither of the jurors had ever discussed it between themselves. The Ninth Circuit reversed, finding that,

> there is a direct and rational connection between the statement that [the defendant] had "done something like this before" and the conclusion that [the defendant] had done "this" again.

*Dickson*, 849 F.2d at 407. The *Dickson* court noted a long history of Ninth Circuit cases recognizing that evidence of prior criminal acts is highly prejudicial. *See, e.g., United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir.1986) (observing that it is extremely difficult for jurors to ignore prior convictions when determining guilt); *United States v. Bagley*, 772 F.2d 482, 488 (observing "the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again"), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Field*, 625 F.2d 862, 872 (9th Cir.1980) (admitting evidence of past convictions of similar of-

fenses raises the specter of "he did it before, he could do it again").

In *Jeffries*, the Ninth Circuit remanded the matter to the district court, with instructions to "keep in mind the 'highly inflammatory' effect that knowledge of substantially similar prior bad acts has upon the jury." *Jeffries*, 5 F.3d at 1191 (citing *Dickson*, 849 F.2d at 406–07).

Additionally, the *Jeffries* court noted five factors, also cited in *Bayramoglu v. Estelle*, 806 F.2d 880 (9th Cir.1986), to consider when determining the effect of extrinsic material on a verdict.

> (1) [W]hether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the material was introduced before a verdict, and if so, at what point in the deliberations it was introduced; and. (5) any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict.

*Id.* at 887. The *Jeffries* court held that these factors were properly considered, although the fifth factor has been obfuscated by *Brecht*.

There are no other post-*Brecht* Ninth Circuit decisions considering prejudicial error due to jury misconduct. However, prior to *Brecht* it was clear that where evidence of prior criminal conduct was improperly presented to the jury, the defendant was entitled to a new trial.[4] By contrast, the Ninth Cir-

---

4. In *United States v. Vasquez*, 597 F.2d 192 (9th Cir.1979), the Ninth Circuit granted a new trial on direct appeal because the official file of the court was inadvertently left in the jury room for four hours during the first day of deliberation. Certain pieces of evidence contained within the file had been explicitly ruled inadmissible by the district court. Specifically, the file contained evidence that the defendant had been previously prosecuted for a similar offense. The district court determined, after interviewing the jurors individually, that the jury read the file but did not take it into consideration in reaching their verdict. Accordingly, the district court did not rule a mistrial.

The Court of Appeals reversed. The Court found that "the possibilities are too great that at least one juror realized that the appellant had been previously prosecuted...." *Id.* at 194.

Consequently, there "existed a reasonable possibility that the court file could have affected the verdict." *Id.*

In *United States v. Tebha*, 770 F.2d 1454 (9th Cir.1985), another direct appeal, the Ninth Circuit found that where the jury was inadvertently given evidence of the purity of drugs involved in the case, the defendant was entitled to a new trial. In *Tebha*, a defendant appealed his conviction for possession of heroin with intent to distribute. One basis for his appeal was that an exhibit, which had not been admitted into evidence, was inadvertently sent into the jury room. This exhibit concerned the purity of the heroin found in the defendant's possession. The district court denied a motion for a new trial based upon the jury misconduct, but the Court of Appeals reversed.

cuit has refused to grant a new trial in at least one pre-*Brecht* jury misconduct case where the improper evidence did not involve prior convictions. *See Hughes v. Borg,* 898 F.2d 695 (9th Cir.1990).[5]

### 2. Application of Previous Holdings to the Facts of This Case

■ In the present case, the jury received the defendant's criminal history record at the beginning of their deliberations and had access to the evidence for the entire deliberation period. Based upon the trial court's examination of individual jurors, it appears that the majority of the jurors viewed the cards and discussed the cards amongst themselves.

The question before this Court is thus whether the evidence of Petitioner's criminal history "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* —— U.S. ——, 113 S.Ct. at 1722. More simply put, the Court must determine whether the jury would have reached its verdict regardless of the error. This requires the Court to sit in the place of the jury, evaluate the evidence they heard, and determine the outcome. In light of the evidence presented, and the absence of rebuttal evidence on Petitioner's behalf, the Court finds that the evidence at issue was not likely to have had a substantial and injurious effect on Borja's trial.

The single most important piece of evidence in Borja's trial was his fingerprint on the victim's window. Fingerprints are irrebuttable evidence that an individual was in a particular place. The only defense to this evidence is an alternative explanation for Petitioner's presence. In this case, the explanation provided by Petitioner's witness was not credible. The Court finds, therefore, that the jury would have convicted Petitioner on the evidence of the fingerprint alone.

Indeed, on August 3, 1994, the Ninth Circuit issued *Taylor v. J.S. Stainer,* 31 F.3d 907 (9th Cir.1994), in which it held that evidence of a defendants' fingerprint on a murder victim's windowsill was sufficient to support the defendant's murder conviction. In that case, the police collected a fingerprint from the victim's windowsill following her murder and determined that the murderer had entered her apartment through the window. Ten years after the murder, police matched the fingerprint from the windowsill with appellant Michael Taylor's print. No evidence other than the fingerprint connected Taylor to the crime.

After trial, Taylor was convicted by a jury of first-degree murder and sentenced to life in prison. His petition for habeas corpus

---

The Ninth Circuit found that the error was not harmless beyond a reasonable doubt because purity was relevant to the issue of whether the defendant intended to "cut" the heroin for distribution. Thus, knowledge of the heroin's 95–96% purity may have improperly influenced the jury. The Court of Appeals found that the evidence was not cumulative because there was no other evidence regarding the purity of the heroin. Because the other evidence against the defendant was "far from overwhelming," the Court granted the defendant a new trial. *Id.* at 1456.

**5.** In the *Hughes* case, the Ninth Circuit interestingly foreshadowed the *Brecht* decision by refusing to grant a habeas corpus petitioner a new trial based on a finding that the "judgment was not **substantially swayed** by the [state court evidentiary] error." *Id.* at 701 (citing *United States v. Henry,* 528 F.2d 661, 668 (D.C.Cir.1976)) (emphasis added).

The *Hughes* Court recognized two methods by which the government may show beyond a reasonable doubt that an evidentiary error was harmless: (1) establishing that the extraneous material was duplicative of evidence properly introduced; or (2) showing that "the other evidence amassed at trial was so overwhelming that the jury would have reached the same result even if it had not considered the extraneous material." *Hughes,* 898 F.2d at 700. The *Hughes* Court found that the inadvertent admission of a police report was harmless error because it contained information that was duplicative of trial testimony by one of the Government witnesses. In addition, the Court found that the admission of a police officer's affidavit attached to a search warrant was not grounds for a new trial because "we can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Id.* at 701 (citations omitted).

A partial list of the evidence admitted against the defendant in *Hughes,* a kidnapping/murder case, includes: bullets from defendant's gun found in the victim's car; the defendant's admission to his brother-in-law that he had killed the victim; and the victim's handbag, covered with the victim's blood, found in the defendant's possession.

relief was subsequently granted by a federal district court which found that the evidence was insufficient to support the conviction. The Ninth Circuit reversed.

The appellate court found that although there were alternative explanations for Taylor's print on the victim's windowsill, it was "virtually inconceivable that Taylor could have left his print on Ms. Jackson's windowsill under any circumstance other than the burglary-murder for which he was convicted." *Taylor v. Stainer*, at 910 (9th Cir.1994). The court noted that "the government is only required to rule out any hypotheses of innocence that are sufficient to create *reasonable doubt.*" *Id.* at 910 (emphasis added). Where there was no evidence supporting the alternative explanations, the jury could rationally find the defendant guilty. *Id.*

The evidence in this case is much stronger than that of *Taylor.* Borja's fingerprint was found on the window which had been forced open by the burglars even though a windowscreen was in place prior to the break in. There was one eye-witness to the crime who saw four burglars; two of whom were arrested at the scene, one of whom was Petitioner's brother. Petitioner offered no credible evidence of any alternative explanation for the fingerprint.

Petitioner did not testify. His girlfriend, who testified on his behalf, claims to have been apartment shopping with the Petitioner on the day of the burglary. As an explanation for the thumb print, she stated that Petitioner left the car to look more closely at some of the houses. However, she admitted on cross-examination that neither she nor Petitioner were employed or had money to rent an apartment and that she and Petitioner had been staying with Petitioner's mother or living in their car. (R. at 178–180.)

On this evidence, the Court finds that the jury would have reached its verdict irrespective of the error.

### III. *BASIS FOR AN EVIDENTIARY HEARING*

The trial court held a hearing to determine the exact nature of the extraneous material that the jury was exposed to, as required by

*Bagnariol,* 665 F.2d at 885. The record indicates that most jurors were aware of the extraneous information. (R. at 272–324.)

Neither the State nor Petitioner request an evidentiary hearing. The State simply asks this Court to adhere to the trial court's finding that the evidence was properly admitted because it was attached to an exhibit that was properly admitted. Petitioner cites the transcript of the trial court's juror examination proceedings in his papers, leading to a conclusion that Petitioner does not contest the facts as developed by the state court.

As there appears to be no factual matter in dispute in this case, there is no basis for an evidentiary hearing. *Harris v. Pulley,* 885 F.2d 1354, 1378 (9th Cir.1988), *cert. denied,* 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1991). At issue is the trial court's legal conclusion, and that of the state appellate court, that the jury's receipt of extraneous material was not juror misconduct, and was not prejudicial to Petitioner. Although the state court's conclusion is given substantial weight, the district court conducts an independent *de novo* review. *Bagnariol,* 665 F.2d at 885.

In determining whether prejudicial extrinsic evidence prevented a defendant from receiving a fair trial, the court applies an objective standard. *Vasquez,* 597 F.2d at 193. Because the actual impact of this material upon a jury cannot be accurately determined, "it is a useless exercise even to ask jurors whether such evidence in fact affected their verdict." *Id.* Therefore, testimony as to the subjective effects of extraneous information is outside the relevant scope of inquiry of a reviewing court. *Jeffries,* 5 F.3d at 1191.

### IV. *CONCLUSION*

The information inadvertently received by the jury was extraneous material. Therefore, Petitioner is entitled to a new trial unless the Court finds that the error did not substantially influence the jury. After considering the evidence in this case, the Court finds that the jury would have convicted Petitioner irrespective of the extraneous evi-

dence. As such, the petition for habeas corpus is DENIED.

IT IS SO ORDERED.