**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Charles H. KEATING, Jr., Charles**
**H. Keating, III, Defendants–**
**Appellees.**

**Nos. 97–50049, 97–50056.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 1997.

Decided June 9, 1998.

Miriam A. Krinsky, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.

Stephen C. Neal and Scott D. Devereaux, Cooley Godward, LLP, Palo Alto, California, and Jeffrey S. Powell, Kirkland & Ellis, Chicago, Illinois, for defendant-appellee Charles H. Keating, Jr.

Dennis J. Landin, Chief Deputy Federal Public Defender and Paul L. Abrams, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellee Charles H. Keating, III.

Before: WIGGINS, KOZINSKI, and THOMPSON, Circuit Judges.

Opinion by Judge WIGGINS; Concurrence by Judge KOZINSKI.

WIGGINS, Circuit Judge:

The government appeals a district court order granting defendants Charles H. Keating, Jr. ("Keating") and Charles H. Keating, III ("Keating III") a new trial following their convictions on charges of racketeering, conspiracy, bank fraud, securities fraud, and wire fraud. Following an evidentiary hearing, the district court found that several jurors during the federal trial learned of and discussed Keating's prior state court conviction. As a result, the court ordered a new trial on the ground of juror misconduct. We have jurisdiction pursuant to 18 U.S.C. § 3731, and, although we do not necessarily agree with the district court's analysis, we affirm.

## BACKGROUND

In June of 1990, Keating and Keating III (collectively "defendants") were charged in a multi-count indictment with myriad violations of federal law. The indictment stemmed from the defendants' alleged orchestration of several fraudulent schemes designed to swindle money from Keating's federally-insured thrift, Lincoln Savings and Loan Association ("Lincoln"), and from purchasers of bonds issued by Lincoln's parent corporation, American Continental Corporation ("ACC").

Approximately ten months before the federal trial, a state court jury in Los Angeles convicted Keating of aiding and abetting the fraudulent sale of ACC bonds. This state trial and verdict were heavily publicized. *See, e.g.,* James Bates & James S. Granelli, *Keating Guilty of Fraud; Faces 10-year Term,* L.A. Times, Dec. 5, 1991, at A1; Jay Mathews, *Keating Guilty on 17 Fraud Counts,* Wash. Post, Dec. 5, 1991, at A1.

In October of 1992, the defendants' federal trial began. The district court excluded any

evidence of or reference to the state conviction, explaining that "the prejudice is just altogether too great. It is just overwhelmingly great...." Notwithstanding this ruling, the district court stated that it would not excuse for cause a prospective juror solely on the ground that the juror knew of the state conviction.

The prospective jurors completed a lengthy questionnaire which asked whether they had heard of either defendant. Ten of the jurors ultimately seated indicated that they had heard of Keating and seven had heard of Keating III. All jurors indicated under oath that they had formed no opinion about the case and that they would decide the case based solely on the evidence presented in court. The defendants chose not to question the jurors about their knowledge of the state conviction for fear that such questioning would impart prejudicial knowledge yet not provide a basis for a cause challenge.

During the trial, the district court frequently reminded the jurors of their obligation to decide the case solely on the evidence presented in court. On January 6, 1993, following six days of deliberation, the jury found the defendants guilty on all counts.

Following the conviction, Keating sent an investigator to interview the jurors. Four jurors signed a declaration indicating that they knew of Keating's state conviction before the federal trial began. Subsequently, the defendants filed a motion for a new trial in the district court.

In response to the government's opposition to the motion, Keating submitted two additional declarations. In the first declaration, alternate juror Wilderman stated that he learned of Keating's prior conviction during the federal trial and that "all the jurors, except possibly Daniel Rasic, discussed the fact that Keating had been previously convicted by the State of California." The second declaration, from Thomas Gallo (Keating's private investigator), stated that juror Ravenstine said he had learned of the state conviction either before or during the trial,

and that juror Rasic said he learned of the conviction during the federal trial.

On July 29, 1993, the district court denied the defendants' new trial motion without holding an evidentiary hearing. The defendants then appealed their conviction to this court, claiming that the district court abused its discretion in declining to order a new trial.

We concluded that the district court had erred and remanded for an evidentiary hearing "to determine whether there is a reasonable possibility extrinsic evidence affected the verdicts." We noted that the evidence of the defendants' guilt was not overwhelming and that, depending on the evidence presented at the evidentiary hearing, a new trial may be justified.

On remand, the district court held an evidentiary hearing at which eleven of the twelve jurors and five of the six alternates testified. Six jurors testified that they did not learn of Keating's prior state conviction either before or during the federal trial. Three jurors testified that they knew about the conviction before the federal trial began but did not discuss it with others. Juror Rasic testified that he learned of the state conviction by reading a newspaper prior to the federal trial. He denied discussing the conviction with any of his fellow jurors. Juror Ravenstine testified that he learned about the state conviction during the federal trial. He said that he overheard a conversation in the jury room: "What I really learned was that he [Keating] was serving time in another jail at the time of this trial.... I believe it was for a previous trial on the same thing. The only difference was it was not federal." Ravenstine believed that he learned this information from juror Webb, now deceased.[1] Ravenstine also indicated that other jurors were present during the conversation but were not listening. He did, however, state that "later on [Keating's state conviction] became common knowledge."

It also appears that juror Webb falsely denied having heard of either Keating or

---

1. For the purposes of this opinion, we will assume that juror Webb conveyed the information to juror Ravenstine.

Keating III in his pretrial questionnaire. In his post-trial declaration, Webb indicated that he had learned of Keating's state conviction before the federal trial. The district court found that Webb discussed the conviction with other jurors.

Alternate Bradley testified that she overheard a brief conversation between three jurors during the trial. She indicated that one juror speculated about the outcome of the state trial: "[T]hey had mentioned there was a previous case concerning Keating and that someone had mentioned they didn't know the outcome and someone said that they felt he had been convicted—he was guilty." In his declaration, alternate Wilderman stated that one juror during the federal trial reported that Keating had been previously convicted. The declaration also stated that all of the jurors, except possibly juror Rasic, discussed the conviction. At the evidentiary hearing, however, alternate Wilderman denied that he had heard jurors discuss the state conviction.

Based on this evidence, the district court granted Keating a new trial. The court explained its decision as follows:

> Although the jurors' conduct during the trial, the attention they paid to the evidence presented, their demeanor, and the course of their deliberations—both the length of the deliberations and the sequence of jury notes—indicated that beyond question, they followed the instructions given them and decided the case based on the evidence presented at trial, this Court is persuaded by defendants' reading of *Dickson v. Sullivan,* 849 F.2d 403, 408 (9th Cir.1988); *United States v. Vasquez,* 597 F.2d 192, 193–94 (9th Cir. 1979); and *Marshall v. United States,* 360 U.S. 310, 312–13, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (per curiam), that once a juror learns of a defendant's prior conviction from any source, including pretrial publicity, because of the prejudicial nature of the information, the government cannot meet its burden of rebutting the presumption of prejudice. The government must prove the error harmless beyond a reasonable doubt.

The court also ordered a new trial for Keating III on the ground that "[w]hen a finding of guilt is dependent upon a connection between defendants, collateral information clearly prejudicial to one defendant is not harmless to the other defendant." The government appeals this order granting both defendants a new trial.

## STANDARD OF REVIEW

■ Ordinarily, we review a district court's decision to order a new trial for an abuse of discretion. *See United States v. Alston,* 974 F.2d 1206, 1212 (9th Cir.1992). In cases where jurors are exposed to extrinsic evidence, however, our review "is an independent one, and we must consider the entire record in determining whether the state has met its burden of demonstrating that extrinsic evidence did not contribute to the verdict." *Dickson v. Sullivan,* 849 F.2d 403, 405–06 (9th Cir.1988).

## DISCUSSION

### I.

As a preliminary matter, the government argues that the defendants waived any claim that the jury might have been poisoned by knowledge of Keating's state court conviction. In support of this contention, the government points out that the defendants had an opportunity to ask jurors during voir dire if they knew about the prior conviction. Neither defendant took advantage of this opportunity.

■ The government's argument may have merit as applied to those jurors who had pretrial knowledge of the state conviction. It is not applicable, however, to any jurors who learned of the conviction *during* the federal trial. As detailed below, juror exposure to extrinsic evidence during trial implicates wholly different concerns than those at issue in pretrial knowledge cases. *Compare Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir.1997) (en banc) (noting that when a juror communicates objective extrinsic facts about the defendant to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause) ("*Jeffries*"), *cert. denied,* —— U.S. ——, 118

S.Ct. 586, 139 L.Ed.2d 423 (1997), *with Patton v. Yount,* 467 U.S. 1025, 1040, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (declining to order a new trial where several jurors knew *before* trial of the defendant's prior conviction for the same crime). Thus, accepting jurors with pretrial knowledge is not tantamount to acquiescing in midtrial juror exposure to extrinsic evidence. Even if the defendants tacitly approved jurors with pretrial knowledge, they did not waive their Sixth Amendment rights "to confront those who testify against [them] and ... to conduct cross-examination." *See Jeffries,* 114 F.3d at 1490. We reject the government's waiver argument as it applies to any juror who learned of Keating's state conviction during the federal trial.

### II.

The district court ordered a new trial after determining that several jurors either had pretrial knowledge of Keating's state conviction or were exposed to the conviction by their fellow jurors during the federal trial. While not disputing the district court's factual findings, the government advances two central arguments against the court's grant of a new trial. First, the government challenges the application of *Dickson v. Sullivan,* 849 F.2d 403 (9th Cir.1988), *United States v. Vasquez,* 597 F.2d 192 (9th Cir.1979), and other so-called "extrinsic evidence" cases to the juror misconduct at issue here. Second, the government contends that even if *Dickson*'s "reasonable possibility" standard applies, it does not require a new trial in this context.

### A.

■ The proper standard in assessing whether jury exposure to extrinsic evidence requires a new trial is well-established: "A defendant is entitled to a new trial when the jury obtains or uses evidence that has not been introduced during trial if there is 'a reasonable possibility that the extrinsic material could have affected the verdict.'" *Dickson v. Sullivan,* 849 F.2d 403, 405 (9th Cir. 1988) (quoting *Marino v. Vasquez,* 812 F.2d 499, 504 (9th Cir.1987)). This rule derives

from "one of the most fundamental tenets of our justice system: that a defendant's conviction may be based only on the evidence presented during the trial." *United States v. Noushfar,* 78 F.3d 1442, 1445 (9th Cir.1996). The district court did not explicitly apply this standard or the factors we have developed to facilitate its application. Instead, the court stated bluntly that "once a juror learns of a defendant's prior conviction from any source, including pretrial publicity, because of the prejudicial nature of the information, the government cannot meet its burden of rebutting the presumption of prejudice."

■ We agree with the government that the district court's language is too broad. It is clear that pretrial juror exposure to a defendant's previous conviction does not create an irrebuttable presumption of prejudice. *See Patton v. Yount,* 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (refusing to grant a new trial where several jurors had pretrial knowledge of the defendant's prior conviction for the same crime). The district court should have employed the "reasonable possibility" standard to decide whether midtrial juror exposure to extrinsic evidence necessitated a new trial. Because our review is an independent one, we are free to engage in that analysis. In doing so, we must examine the record to determine whether "the state has met its burden of demonstrating that extrinsic evidence did not contribute to the verdict." *Dickson,* 849 F.2d at 406. Before we proceed to that task, however, we address the government's claim that the "reasonable possibility" standard should not apply in this case.

■ As noted above, the "reasonable possibility" standard applies to cases where jurors are exposed to extrinsic evidence. *See Dickson,* 849 F.2d at 405; *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979). In this case, the extrinsic evidence was the information about Keating's prior state conviction relayed through intrajury communications during the federal trial. The government concedes that at least one juror learned of the conviction during the federal trial.[2]

2. Specifically, juror Ravenstine testified at the evidentiary hearing as follows: "What I really

learned was that [Keating] was serving time in another jail at the time of this trial.... I believe

We have previously indicated that this type of intrajury communication constitutes extrinsic evidence sufficient to trigger the "reasonable possibility" standard. *See Jeffries v. Blodgett*, 5 F.3d 1180, 1189 (9th Cir.1993) ("*Jeffries III*").[3]

Notwithstanding this seemingly clear precedent, the government seeks to distinguish *Jeffries, Dickson,* and *Vasquez* on the ground that they involved constitutional error and, in the case at bar, any trial error was nonconstitutional. The government contends that this purported distinction means that the "reasonable possibility" standard should not apply. In support of this argument, the government relies on several pretrial publicity cases and notes that pretrial juror knowledge of a defendant's prior conviction is not automatically reversible error. *See, e.g., Mu'Min v. Virginia*, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991); *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *Murphy v. Florida*, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975).

■ We are not persuaded by this argument. These pretrial publicity cases do not involve midtrial exposure to extrinsic evidence. Nor do they involve a discussion between jurors of the inadmissible evidence. Together, they stand for the proposition that a defendant is not constitutionally entitled to an ignorant jury. *See Murphy*, 421 U.S. at 799–800, 95 S.Ct. 2031 (recognizing that "jurors need not, however, be totally ignorant of the facts and issues involved"). Our case implicates different concerns than those at issue in the pretrial publicity cases. Consequently, those cases do not govern the analysis in an extrinsic evidence case.

■ The government ignores the important distinction between pretrial juror knowledge of a defendant's prior conviction and knowledge obtained during the trial. Here, at least one juror learned of and several jurors discussed the state conviction during Keating's federal trial. In effect, those jurors who communicated the information testified against Keating in violation of his Sixth Amendment rights. This court recently emphasized the harm from such extrinsic evidence:

> Under the Sixth Amendment, a criminal defendant has the right to confront those who testify against him or her and the right to conduct cross-examination. When a juror communicates objective extrinsic facts regarding the defendant or the alleged crimes to other jurors, the juror becomes an unsworn witness within the meaning of the Confrontation Clause. That the unsworn testimony comes from a juror rather than a court official does not diminish the scope of a defendant's rights under the Sixth Amendment.

*Jeffries*, 114 F.3d at 1490 (citations omitted). The Sixth Amendment requires the jury verdict to be based on the evidence produced at trial. *See id.* The pretrial publicity cases do not address the harm resulting from a juror becoming an unsworn witness. Thus, the government's reliance on those cases is misplaced, and its argument that the "reasonable possibility" standard should not apply must fail. The fact that at least one juror—juror Ravenstine—received extrinsic evidence is sufficient to trigger the "reasonable possibility" standard of *Dickson* and *Vasquez*.

**B.**

■ Keating is entitled to a new trial if there is a reasonable possibility that the communication to juror Ravenstine could have affected the verdict.[4] Our inquiry is objec-

---

it was for a previous trial on the same thing. The only difference was it was not federal."

3. In *Jeffries v. Wood*, a juror announced to the jury that "Jeffries is a convicted armed robber." *Jeffries v. Blodgett*, 5 F.3d 1180, 1189 (9th Cir. 1993) ("*Jeffries III*"). This court, sitting en banc, agreed that the juror communication was extrinsic evidence amounting to constitutional error. *See Jeffries v. Wood*, 114 F.3d 1484, 1492 (9th Cir.1997) (en banc) ("*Jeffries*"), *cert. denied*, ___ U.S. ___, 118 S.Ct. 586, 139 L.Ed.2d

423 (1997). The court applied the harmless error standard because the case was on collateral review, *see Jeffries*, 114 F.3d at 1489, but the panel in *Jeffries III* recognized that the standard on direct review would have been the *Dickson* "reasonable possibility" standard. *See Jeffries III*, 5 F.3d at 1190.

4. An alternative and equivalent articulation of the "reasonable possibility" test is whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the ver-

tive rather than subjective; we need not ascertain whether the extrinsic evidence *actually* influenced any specific juror. *See Jeffries,* 114 F.3d at 1491; *Dickson,* 849 F.2d at 406. The government has the burden of showing beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict. *See United States v. Navarro–Garcia,* 926 F.2d 818, 821 (9th Cir.1991). In both *Dickson* and *Jeffries,* we listed several factors to consider in determining whether the government has met this burden. We now turn to that analysis.

The *Dickson* factors are:

1. whether the material was actually received, and if so, how;

2. the length of time it was available to the jury;

3. the extent to which the juror discussed and considered it;

4. whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and

5. any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

*Dickson,* 849 F.2d at 406 (citing *Marino v. Vasquez,* 812 F.2d 499, 506 (9th Cir.1987)). Because we are concerned with whether it can be concluded beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict, no one of these factors is dispositive in a given case. *See id.*

▮ Juror Ravenstine received the information about Keating's prior state court conviction from juror Webb during the federal trial. Consequently, he had much of the trial and the entire deliberations to consider it. We have previously concluded that intrajury communications may constitute prejudicial extrinsic evidence sufficient to require a new trial. *See Jeffries,* 114 F.3d at 1492. Thus, the first, second, and fourth *Dickson* factors weigh in favor of a new trial.

Several jurors testified at the evidentiary hearing that Keating's state conviction was

discussed in the jury room. Alternate juror Bradley testified that she overheard three jurors discussing the extrinsic evidence. Similarly, juror Ravenstine stated that "later on [Keating's state conviction] became common knowledge." Even if the discussions were brief, it is clear that they took place. Accordingly, the third *Dickson* factor also favors a new trial. *Cf. United States v. Vasquez,* 597 F.2d 192, 194 (9th Cir.1979) (requiring a new trial where the jury was exposed to extraneous information highly prejudicial to the defendant, even though it was unclear whether the jury actually considered or discussed the information).

Under the fifth *Dickson* factor, we think it important to consider the nature of the extrinsic evidence. Juror Ravenstine learned from juror Webb that Keating was serving time "for a previous trial on the same thing. The only difference was it was not federal." Information that another panel of impartial jurors has already heard the case against the defendant and concluded, beyond a reasonable doubt, that he is guilty is highly prejudicial. *See United States v. Lewis,* 787 F.2d 1318, 1323 (9th Cir.1986) (observing that it is extremely difficult for jurors to ignore prior convictions when determining guilt). There is a substantial risk that juror Ravenstine based his decision in part on the extrinsic evidence. As in *Dickson,* "[t]his is not a case in which the extrinsic information was relatively harmless." 849 F.2d at 407.

In *Jeffries,* our court recently articulated several other factors to consider in determining whether the government has proven harmlessness beyond a reasonable doubt. These, too, support the district court's order:

1. whether the prejudicial statement was ambiguously phrased;

2. whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial;

3. whether a curative instruction was given or some other step taken to ameliorate the prejudice;

4. the trial context;[5] and

---

dict. *See United States v. Navarro–Garcia,* 926 F.2d 818, 821 (9th Cir.1991).

**5.** This factor includes consideration of the *Dickson* factors. *See Jeffries,* 114 F.3d at 1491–92 n. 10.

5. whether the statement was insufficiently prejudicial given the issues and evidence in the case.

*Jeffries,* 114 F.3d at 1491–92.

First, the information conveyed was not ambiguous. Juror Ravenstine testified that he learned of the conviction from a fellow juror. Ravenstine stated that "it was for a previous trial on the same thing" and "[t]he only difference was it was not federal." Furthermore, alternate Bradley stated that a juror told others that Keating "was guilty." Less ambiguous statements are hard to imagine. *Cf. Thompson v. Borg,* 74 F.3d 1571, 1576 (9th Cir.1996) (affirming finding of no prejudice in part because the juror's remark-"pleaded guilty at one time and changed it"-was "vague and awkwardly phrased"), *cert. denied,* — U.S. ——, 117 S.Ct. 227, 136 L.Ed.2d 159 (1996).

Second, the district court excluded evidence of Keating's state conviction, deeming the concomitant prejudice "overwhelmingly great." Thus, the extrinsic evidence introduced by juror Webb was not merely cumulative of other evidence adduced at trial. It was entirely new and inadmissible evidence.

Third, the district court did not offer a curative instruction because the court was unaware that the jurors had discussed the extrinsic evidence. *Cf. Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (exercising the Court's supervisory powers to order a new trial even where the trial court discovered the extrinsic evidence and offered a curative instruction).

Fourth, the trial context indicates that at least one juror learned of the conviction during the trial and more than one discussion about the extrinsic evidence occurred. Additionally, the *Dickson* factors weigh in favor of a new trial. This context suggests that the error was not harmless.

Finally, the evidence of Keating's prior state conviction was, as the district court recognized, extremely prejudicial. The state conviction was based on the same set of events at issue in the federal trial. This court has emphasized that "the danger of prejudice to the defendant is exacerbated where the prior offense is similar to the offense being tried." *Dickson,* 849 F.2d at 407. Here, the prior offense was not simply similar—it was, in essence, *identical* to the offense being tried. Moreover, as we noted in our remand order, the evidence of the defendants' guilt was not overwhelming. Thus, the evidence adduced at trial does not suggest that the introduction of the extrinsic evidence was harmless.

Notwithstanding the near uniformity of these factors, the government attempts to meet its burden of showing harmlessness by stressing that the district court found that the jurors "followed the instructions given them and decided the case based on the evidence presented at trial." In doing so, the government forgets that our inquiry is an objective, not subjective, one. *See, e.g., Jeffries,* 114 F.3d at 1491 ("Jurors' testimony that extrinsic evidence is not harmful is not controlling."); *Dickson,* 849 F.2d at 406 (stating that "we give no deference to the trial judge's conclusion that the jurors in this case in fact obeyed the jury instructions"); *Vasquez,* 597 F.2d at 194 ("A trial judge should not investigate the subjective effects of any such breach upon the jurors."). It is immaterial that the district court believed that juror Ravenstine's decision was not influenced by the extrinsic evidence.

On balance, the *Dickson* and *Jeffries* factors confirm that the government has failed to show beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. The unambiguous information about Keating's prior conviction was available to juror Ravenstine for a considerable period of time, was discussed between jurors, and was highly prejudicial. The probability that one or more jurors reached a verdict based in part on the extrinsic evidence is unacceptably high. *See Dickson,* 849 F.2d at 408 ("If only one juror was unduly biased or improperly influenced, [the defendant] was deprived of his sixth amendment right to an impartial panel."). Under these circumstances, we agree with the defendants that there is a reasonable possibility that the extrinsic evidence could have affect-

ed the verdict. We hold, therefore, that Keating is entitled to a new trial.[6]

### III.

 We also agree with the district court that Keating III is entitled to a new trial because of the introduction of the extrinsic evidence. As discussed above, the extrinsic evidence of Keating's prior conviction was clearly prejudicial to Keating. It is well-established that prejudice to one defendant can spill over to "closely associated" coconspirators. *See, e.g., United States v. Patterson,* 648 F.2d 625, 630 (9th Cir.1981) (noting that any juror prejudice against one defendant would "carry over to such persons closely associated with him in the jurors' minds"). In this case, Keating and Keating III were surely "closely associated" in the jurors' minds. The government's case alleged that both men were intricately involved in a scheme to swindle money from investors. The government argued that the two acted in concert. Moreover, Keating and Keating III are father and son, a close bond which accentuates the association between the two defendants in the jurors' minds. The government does not dispute this close association.

The prejudice suffered by Keating when the jurors learned of and discussed his state conviction spilled over to Keating III. We hold, therefore, that Keating III is likewise entitled to a new trial. *Accord Holmes v. United States,* 284 F.2d 716, 719 (4th Cir. 1960) (ordering a new trial for a defendant when his codefendant suffered prejudice and the "finding of guilt was so dependent upon the connection between the two").

---

6. Keating also contends that double jeopardy principles require us to address the sufficiency of the evidence claims he raised in his original appeal. In that appeal, we determined that the district court had erred by failing to conduct an evidentiary hearing on the juror misconduct issue. We remanded the case to the district court and noted that "[i]n the event of a further appeal, we will reinstate defendants' remaining contentions in this appeal and dispose of them at that time." Following remand, the district court granted the defendants' motion for a new trial. The instant case is the government's appeal from this grant of a new trial.

### CONCLUSION

While we agree with the government that the language of the district court's order is too broad, we conclude that there is a reasonable possibility that the extrinsic evidence of Keating's prior state court conviction could have affected the verdict. Because of the close association between the two defendants, the prejudice suffered by Keating spilled over to his son, Keating III. Consequently, Keating and Keating III are entitled to new trials.

### AFFIRMED.

KOZINSKI, Circuit Judge, concurring.

I join all but footnote six of the majority opinion, which holds that we need not address the Keatings' sufficiency-of-the-evidence argument because jeopardy has not yet terminated. We review sufficiency claims all the time on direct appeal, even though jeopardy has not terminated. *See, e.g., United States v. Ladum,* 141 F.3d 1328, 1336–37 (9th Cir.1998); *United States v. Tubiolo,* 134 F.3d 989, 991 (9th Cir.1998); *United States v. Tucker,* 133 F.3d 1208, 1214 (9th Cir.1998). If the majority were right, sufficiency claims could only be raised on collateral review; that has never been the law.

The majority errs by equating double jeopardy claims with sufficiency claims. Double jeopardy claims are sometimes based on a determination that the government presented insufficient evidence in a prior trial, *see Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), but the two claims are certainly not identical. Insufficiency can't be raised on interlocutory appeal; double jeopardy can. *United States v. Gutierrez–Zamarano,* 23 F.3d 235, 238 (9th Cir. 1994), a double jeopardy case, therefore does

---

When Keating is retried, his double jeopardy rights will not be implicated regardless of the sufficiency of the evidence at the first trial. *See United States v. Gutierrez–Zamarano,* 23 F.3d 235, 238 (9th Cir.1994). This is so because Keating's original jeopardy has not terminated. *See id.; see also United States v. Wood,* 958 F.2d 963, 970 (10th Cir.1992) ("A guilty verdict by a jury which is set aside by the district court on a motion by the defendant does not terminate jeopardy."). Accordingly, we decline the defendants' invitation to review the sufficiency of the evidence at this stage.

not apply here. Our case is governed by *United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir.1984), which held that we must reach a sufficiency claim on direct appeal even if there are other grounds for reversal.

The only way this case differs from *Bibbero* is that this is not a direct appeal; it is an interlocutory appeal brought by the government. But this can't be held against the Keatings, who challenged the sufficiency of the evidence in their direct appeal from the judgment of conviction. We chose to postpone their claim and remand the case for factual exploration of the jury misconduct issue. By so doing we did not-could not under *Bibbero*-cut off defendants' right to have their sufficiency claim ruled upon. Indeed, our order makes it clear that we were merely postponing (not rejecting or bypassing) defendants' other claims, including sufficiency: "In the event of a further appeal, we will reinstate defendants' remaining contentions in this appeal and dispose of them at that time." That time is here. We are bound to do as we promised, as our caselaw requires us to.

I therefore reach the Keatings' sufficiency claim. While the government's proof was not overwhelming, a rational jury could have convicted based on the evidence-if only just barely. Thus, I agree that we must remand for retrial.