Michael Robert PULIDO,
Petitioner—Appellee,

v.

Chris CHRONES, Warden,
Respondent—Appellant.

Michael Robert Pulido, Petitioner—
Appellant,

v.

Chris Chrones, Warden, Respondent—
Appellee.

Nos. 05–15916, 05–16308.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2006.

Submission withdrawn Aug. 1, 2006.

Filed May 30, 2007.

See also, 487 F.3d 669.

J. Bradley O'Connell, Esq., First District Appellate Project, San Francisco, CA, for Petitioner–Appellee, Petitioner–Appellant.

Michael Robert Pulido, Corcoran, CA, pro se.

Jeremy E. Friedlander, Esq., Office of the California Attorney General, San Francisco, CA, for Respondent–Appellant, Respondent–Appellee.

Before: GOODWIN, O'SCANNLAIN, and THOMAS, Circuit Judges.

## MEMORANDUM *

Michael Pulido, the petitioner-appellant, cross-appeals the denial of his habeas petition on several grounds. In a concurrently filed opinion, we affirm the grant of habeas relief. *See Pulido v. Chrones,* Nos. 05–15916 & 05–16308 (**filed** ___). The facts and prior proceedings are known to the parties and are repeated herein only as necessary.

### I

### A

■ First, Pulido contends that the prosecution "knew, or should have known"

that testimony given during his trial was perjured. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). To make a successful *Agurs* claim; Pulido must show that the perjured testimony "was material, that is, there is a reasonable likelihood that the false evidence or testimony could have affected the judgment of the jury." *Morris v. Ylst,* 447 F.3d 735, 743 (9th Cir.2006).

Pulido does not—indeed, cannot—explain how Moore's testimony was material. Pulido's explanation for the murder was that he was with Aragon at the Shell station, but that Aragon committed the murder. The jury—having deadlocked on the issue whether Pulido had personally committed the murder—apparently believed that Aragon was the shooter, and that Pulido was only guilty of murder because of his involvement in a murder-robbery. Because Moore's testimony related *only* to whether Pulido acted alone in robbing the Shell station—an issue the jury already resolved in Pulido's favor—this testimony had nothing to do with establishing Pulido's role in the murder-robbery. Thus, there is no reason to suspect that Moore's testimony would have had any relevance to the jury. *See People v. Pulido,* 52 Cal. Rptr.2d 373, 381 (Ct.App.1996) ("The guilty verdicts reflect that the jury rejected appellant's claim of ignorance as to his uncle's purpose, and unwilling participation under duress[.]").

### B

Based on Moore's allegedly false testimony, Pulido also contends that he is entitled to relief because "a conviction tainted by perjured prosecution testimony may vi-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

olate due process, even if the prosecution was unaware of the perjury." While there is no evidence that the prosecutor knowingly suborned perjured testimony from Moore, we assume this is so for the purposes of deciding whether Pulido is entitled to an evidentiary hearing. *See Gonzalez v. Pliler,* 341 F.3d 897, 903 (9th Cir.2003).

For the reasons noted above, however, the state can show that any error was harmless beyond a reasonable doubt.[1] Moore's testimony, according to Pulido, was "crucial to the credibility contest between Pulido and Aragon." The prosecution, however, *lost* this credibility battle: The jury concluded that Pulido played a role in the robbery during which a murder was committed, but did not believe that Pulido acted alone. *See People v. Pulido,* 52 Cal.Rptr.2d at 381 ("The guilty verdicts reflect that the jury rejected appellant's claim of ignorance as to his uncle's purpose, and unwilling participation under duress, after the shooting."). Thus, there was no prejudicial due process violation, even assuming Moore's testimony was perjured.

## II

■ Pulido's next claim of prosecutorial misconduct focuses on the prosecutor's allegedly vouching for Aragon's truthfulness. A claim of prosecutorial misconduct requires the court to find (1) impropriety, and (2) substantial prejudicial effect.

*United States v. Weatherspoon,* 410 F.3d 1142, 1145–1146 (9th Cir.2005).

To demonstrate prejudice, Pulido must show that "it is more probable than not that the [prosecutorial misconduct] materially affected the verdict." *United States v. Christophe,* 833 F.2d 1296, 1301 (9th Cir. 1987). It is clear, however, that the prosecutorial misconduct, if any, did not have any impact on the verdict. It is critical here, once again, that the jury did *not* believe that Aragon was truthful. Because the jury rejected the prosecution's theory that Pulido acted alone, it must have rejected Aragon's testimony. Any vouching, therefore, was ineffective and not prejudicial.

## III

■ Next, Pulido asserts that the trial court erred by failing to appoint substitute counsel for his sentencing and post-verdict motions. *See Schell v. Witek,* 218 F.3d 1017, 1026 (9th Cir.2000); *see also People v. Marsden,* 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44, 48 (1970).

Under *Schell,* when considering whether habeas relief should issue because of a failure to engage in a *Marsden* hearing, we consider "whether [the] conflict deprived [Pulido] of the representation to which he was entitled by the Sixth Amendment." *Schell,* 218 F.3d at 1027. The Supreme Court has firmly rejected the view that the Sixth Amendment guarantees a "meaningful attorney-client relationship." *Morris v.*

1. "[T]he standard of review applicable to the *knowing* use of perjured testimony is equivalent to the *Chapman* harmless-error standard." *United States v. Bagley,* 473 U.S. 667, 680 n. 9, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (emphasis added). If, however, the prosecution did not knowingly present the perjured testimony, then a new trial is warranted "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. 3375. If the prosecution meets the standing for the knowing presentation of false testimony (harmlessness beyond a reasonable doubt), it can necessarily meet the lower standard for the unknowing presentation of false testimony (the reasonable probability standard). *Id.*

*Slappy,* 461 U.S. 1, 13–14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). Rather, the Sixth Amendment requires "that counsel act as an advocate," *Plumlee v. del Papa,* 426 F.3d 1095, 1103 (9th Cir.2005), so "[i]n evaluating Sixth Amendment claims, *the appropriate inquiry focuses on the adversarial process,* not on the accused's relationship with his lawyer as such." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (emphasis added). Thus, "the essential aim of the [Sixth] Amendment is to guarantee *an effective advocate* for each criminal defendant." *Id.* (emphasis added).

Pulido alleged that his counsel did not visit him frequently enough; yet he nowhere alleged that his counsel's failure to do so caused any prejudice. Thus, it was not objectively unreasonable for the state trial court to conclude that Pulido did not merit a hearing because his allegations—if true—were still insufficient to establish a Sixth Amendment claim: Pulido did not allege in that letter that his counsel's performance was at all deficient, that is, that counsel was not an "effective advocate." *Id.*

Thus, the state trial court did not apply Sixth Amendment jurisprudence in an objectively unreasonable manner by failing to hold a *Marsden* hearing.

## IV

■ Pulido last contends that he is entitled to an evidentiary hearing on his trial counsel's failure to pursue apparent juror misconduct after a dictionary was found in the jury deliberation room. *See United States v. Keating,* 147 F.3d 895, 900 (9th Cir.1998). However, the mere presence of extrinsic materials is insufficient to warrant a new trial, especially where curative instructions are given. *See id.; United States v. Prime,* 431 F.3d 1147, 1158 (9th Cir.2005).

Here, Pulido can satisfy neither *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), prong. First, Pulido must show that "had the motion been filed, there was a reasonable probability that ... the outcome of the trial would have been different[.]" *Lowry v. Lewis,* 21 F.3d 344, 346–47 (9th Cir. 1994) (citing *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). Generally, "[j]uries are presumed to follow the court's instructions." *Aguilar v. Alexander,* 125 F.3d 815, 820 (9th Cir.1997) (citing *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)), so a curative instruction can rectify exposure to prejudicial materials; however, there are certain "extreme" circumstances under which a curative instruction will be insufficient to neutralize otherwise-prejudicial evidence. *Id.* The dictionary was found on July 1st, and the jury was admonished both on July 1st at the conclusion of deliberations *and* July 2nd *before* deliberations began that it must not consider the dictionary definition of any words. The trial judge repeatedly instructed the jury that they may not consider dictionary definitions and that *if* they had relied on dictionary definitions in their prior deliberations, they must re-evaluate any decisions they made based on the dictionary. The judge further explained that if the case came out differently, then the jury must return the verdict dictated by the definitions given, not by the dictionary definitions. This is sufficient to cure any potential harm.

Thus, because (1) there was no evidence of prejudice and (2) even if there were, a curative instruction would have been sufficient, it is far from certain that the result of the proceeding would have been different had Pulido's trial counsel objected.

Further, given the apparent strength of this claim—the lack of evidence that the

jury had consulted the dictionary, the repeated curative instructions, and the relatively tame nature of the information—it was reasonable for Pulido's attorney to decide not to pursue this avenue of relief. *Lowry*, 21 F.3d at 346 (noting that because an attorney's resources are limited, the filing of additional motions is never costless).

Given the strength of Pulido's claim, and therefore the reasonableness of not pursuing such a weak claim, the state court decision cannot be called objectively unreasonable.

## V

Thus, as to the four grounds for granting habeas relief presented in Pulido's certificate of appealability, the decision of the district court is AFFIRMED.