**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 21 2015

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-30318 |
| Plaintiff - Appellee, | D.C. No. 1:12-cr-00066-WFN-1 |
| v. | |
| BENJAMIN QUINN MCCHESNEY, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Montana
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted May 7, 2015
Portland, Oregon

Before: W. FLETCHER and HURWITZ, Circuit Judges and BAYLSON,[**] Senior
District Judge.

Benjamin McChesney was convicted of theft of firearms from a licensed

dealer, 18 U.S.C. § 924(m), theft of firearms in interstate commerce, 18 U.S.C.

§ 924(l), and possession of a stolen firearm, 18 U.S.C. § 922(j).   We have

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Michael M. Baylson, Senior District Judge for the U.S.
District Court for the Eastern District of Pennsylvania, sitting by designation.

jurisdiction over his appeal of the convictions and resulting sentences under 28 U.S.C. § 1291. We reject McChesney's numerous claims of pre-trial and trial error. However, because we conclude that an evidentiary hearing on McChesney's new trial motion is required, we vacate the judgment and remand for further proceedings.

1. McChesney represented himself until the jury returned its verdict. As the district court repeatedly warned McChesney before granting his motion to proceed pro per, pretrial incarceration inevitably affected his trial preparation. But, contrary to McChesney's arguments, he was not denied the right to meaningful self-representation. *See United States v. Farias*, 618 F.3d 1049, 1053 (9th Cir. 2010) (explaining that a defendant has the right to represent himself "meaningfully"). McChesney was provided "access to law books . . . or other tools to assist him in preparing a defense," *Bribiesca v. Galaza*, 215 F.3d 1015, 1020 (9th Cir. 2000) (alteration in original) (internal quotation marks omitted), access to standby counsel, and a budget for an investigator. He was allowed to make phone calls and keep discovery in his cell subject to the general restrictions of the pre-trial detention facility and District of Montana Local Rules. *See Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985) (explaining that the right to self-representation "is not unlimited" and may be constrained by "[s]ecurity considerations"). And, he

was not unreasonably denied access, either during the trial or before, to witnesses or his co-defendant.

**2.** McChesney's waiver of counsel was knowing and intelligent and his request to represent himself was unequivocal. *See Faretta v. California*, 422 U.S. 806, 835 (1975); *United States v. Robinson*, 913 F.2d 712, 714 (9th Cir. 1990).

**a.** The district court conducted a robust *Faretta* colloquy with McChesney in a separate case only four weeks before he requested to proceed pro per in this case. Citing the previous proceedings, McChesney repeatedly informed the court that he wished to waive a repeated detailed warning about the dangers of self-representation in this case, but the court nonetheless issued an order reiterating those risks.

**b.** McChesney's stated preference for hybrid counsel did not render his request to proceed pro per equivocal. *United States v. Hernandez*, 203 F.3d 614, 621-22 (9th Cir. 2000), *overruled on other grounds by Indiana v. Edwards*, 554 U.S. 164 (2008). McChesney acknowledged that standby counsel's role was "exceedingly clear." If his "waiver of his right to counsel was truly conditioned on his expectation that [standby counsel] would play a larger role in his defense, he could have withdrawn his waiver and asked the district court to appoint full counsel at that time." *United States v. Moreland*, 622 F.3d 1147, 1157 (9th Cir. 2010).

**3.** McChesney has presented no support for his contention that the government suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or impeachment evidence in violation of *Giglio v. United States*, 405 U.S. 150 (1972).

**4.** The district court did not violate the Sixth Amendment by limiting the scope of cross-examination of three witnesses. McChesney cross-examined each witness at length, the court legitimately limited repetitive or argumentative questioning, and the jury had sufficient information to assess the witnesses' credibility. *See United States v. Larson*, 495 F.3d 1094, 1101-05 (9th Cir. 2007) (en banc).

**5.** The district court did not abuse its discretion in denying a motion for a continuance. *See United States v. Zamora-Hernandez*, 222 F.3d 1046, 1049 (9th Cir. 2000) (identifying relevant factors).

**6.** The court did not abuse its discretion in admitting evidence of McChesney's flight to Mexico. "Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt itself." *United States v. Felix-Gutierrez*, 940 F.2d 1200, 1207 (9th Cir. 1991) (internal quotation marks omitted). Moreover, the jury was instructed "that there may be reasons fully consistent with innocence that could cause a person to flee."

4

**7.** The court did not abuse its discretion in allowing the government to establish that a witness had been shot in the head. The prosecutor's questions to the witness about the shooting were limited to asking what had happened and establishing that "the person who did that to [her] is in prison now."

**8.** Evidence about a telephone call that McChesney received from a jail inmate did not have "an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991).

**9.** Isolated comments by the district judge to which McChesney did not object did not amount to plain error. *See United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (explaining that a new trial should only be ordered when the record "discloses actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that the judge's remarks . . . projected to the jury an appearance of advocacy or partiality" (internal quotation marks omitted)). The court instructed the jury that the "verdict must be based solely on the evidence and the law as I have given it to you in these instructions" and that "nothing that I have said or done is intended to suggest what your verdict should be." *See United States v. Morgan*, 376 F.3d 1002, 1009 (9th Cir. 2004).

**10.** The district court's question at the close of the defense's case about McChesney's "personal plan" with respect to the remainder of his defense was not prejudicial. *See United States v. Schaflander*, 719 F.2d 1024, 1025-26 (9th Cir. 1983). The court made clear that it was McChesney's "choice" not to testify, and the jury was instructed that "[a] defendant in a criminal case has a constitutional right not to testify. You may not draw any inference of any kind from the fact the defendants did not testify."

**11.** McChesney "waived his right to appeal the district court's denial of his severance motion by failing to renew the motion at the close of evidence." *United States v. Sherwood*, 98 F.3d 402, 409 (9th Cir. 1996).

**12.** The district court did not err in calculating McChesney's sentence.

**a.** Judicial fact finding did not "increase[] the punishment above what is otherwise legally prescribed." *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013).

**b.** Clear and convincing evidence supported an eight-level multiple firearms enhancement under United States Sentencing Guidelines Manual § 2K2.1(b)(1)(D), and a four-level trafficking enhancement under § 2K2.1(b)(5) and Note 13(A).

**c.** The evidence was sufficient to support a four-level enhancement for possession of a firearm "in connection with" the other felony offense of burglary. U.S.S.G. § 2K2.1(b)(6)(B); *id.*, Note 14(B).

**d.** Because McChesney's prior sentences resulted from offenses committed on separate days and separated by an intervening arrest, the district court correctly treated those sentences separately in calculating McChesney's criminal history. *See* U.S.S.G. § 4A1.2(a)(2).

**13.** McChesney's claim that the grand jury was biased has no support in the record.

**14.** McChesney's new trial motion claimed that during trial recesses, his ex-girlfriend stood in the courthouse lobby and "engaged in loud and disruptive conversations . . . . about [his] criminal past, bad character, and his willingness to do anything for money. . . . directly to, or in the presence of, members of the jury." McChesney later submitted an affidavit from a woman who asserted that, as she was "leaving the courthouse and turning in" her badge "on or about July 10, 2013," she heard the ex-girlfriend state "in a loud manner" in front of "[a]t least three jurors" in the lobby that McChesney "had a criminal past" and that he "would do anything he had to do for money."

**a.** The district court denied the new trial motion without conducting an evidentiary hearing. When determining whether to hold an evidentiary hearing, the district court must consider (1) "the content of the allegations," (2) "the seriousness of the alleged misconduct," and (3) "the credibility of the source." *United States v. Decoud*, 456 F.3d 996, 1018 (9th Cir. 2006). "We review the denial of a post-verdict evidentiary hearing for an abuse of discretion." *United States v. Saya*, 247 F.3d 929, 934 (9th Cir. 2001).

**b.** The district court found that the affidavit did not state the date and time of the alleged incident and there was no way to know whether it occurred before the verdict was rendered. In fact, the affidavit claimed the alleged incident occurred on or about July 10, 2013, and the jury did not reach a verdict until July 11. In discounting the affiant's credibility, the court also speculated that "no fewer than two court security officers would have been present" in the lobby where the comments were allegedly made, and that they "would have reported the conduct" had it occurred. The factual basis for this conclusion, which is not self-evident, is not in the record.

**c.** The district court also concluded that any communication with a juror was de minimis, and found "absolutely no showing of actual prejudice by Defendant." However, "[a] communication is . . . not *de minimis,* if it raises a risk of influencing the verdict." *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 697 (9th

8

Cir. 2004). The statements that McChesney "had a criminal past," and that he "would do anything he had to do for money," posed such a risk, particularly because McChesney's criminal history was not introduced at trial. *See United States v. Keating*, 147 F.3d 895, 900-01 (9th Cir. 1998).

**d.** There may well be good reasons to doubt the affiant's credibility. But on the record before us, we conclude that the court should have held an evidentiary hearing to determine whether the alleged statements were made, and if so, whether they were heard by jurors and there is a reasonable possibility they affected the verdicts. *See Remmer v. United States*, 347 U.S. 227, 229-30 (1954) ("The trial court should not decide and take final action ex parte on information such as was received in this case, but should determine the circumstances, the impact thereof upon the juror[s], and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.").

**e.** We therefore vacate the judgment and remand for further proceedings consistent with this disposition. If the district court denies the new trial motion on remand, it shall reinstate the judgment. *See United States v. Rutherford*, 371 F.3d 634, 645 (9th Cir. 2004).

**VACATED AND REMANDED.**