UNITED STATES of America,
Plaintiff,

v.

**Robin Sidney SAYA, Defendant.**

**Crim. No. 95–01065–03 ACK.**

United States District Court,
D. Hawaiʻi.

Aug. 4, 1999.

---

Lane Y. Takahashi, Honolulu, HI, Judy Clarke, Federal Defenders of Eastern Washington & Idaho, Spokane, WA, for Robin Sidney Saya, defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL

KAY, District Judge.

### BACKGROUND

In November 1993, Defendant and his girlfriend, Carol Ching, were victims of a shooting in the Kukui Plaza parking garage, located in Honolulu's Chinatown area. Carol Ching was killed and Defendant was injured when Russell Cullen fired several shots from a semi-automatic handgun into a truck driven by Defendant. As a result of the shooting, Defendant lost control of the truck, crashed it through a concrete wall, and pushed a parked sedan onto a city bus on the street below. Defendant's truck was left suspended above the street, hanging from the second story of the parked garage.

In November 1995, Defendant was charged in a conspiracy with Alfredo Bunag, Robbie Sylva, Frank Burke, Harland Kanahele, and Clinton Mau to possess with intent to distribute crystal methamphetamine ("ice"). The parties agreed, prior to both the first trial and the second trial, that evidence regarding the shooting of Carol Ching and Defendant by Russell Cullen would not be introduced.

Bunag, Mau, and Kanahele pleaded guilty. The first trial of Defendant, Sylva, and Burke in this Court ended in a mistrial on January 29, 1997. Because of jury tampering in the first trial, the government moved for an anonymous jury in the second trial. The Court granted the government's motion, over the defendants' objections. Defendant Saya subsequently moved for a change of venue based on pretrial publicity, claiming that if the case were tried in Hawaii, he would be prejudiced. The Court granted Defendant's motion in part because it would also obviate the need for an anonymous jury, and the case was transferred to Spokane, Washington. Thereafter, Defendant's case was severed from that of his co-defendants, and Sylva and Burke were tried in Washington. Subsequently, Defendant's counsel withdrew, and Defendant's new attorney, Judy Clarke, requested the case be returned to Hawaii. Clarke argued that any adverse publicity in Hawaii had diminished with the passing of time, and further asserted that any lingering problems could be handled during voir dire. Judge Robert Whaley granted the request, and the trial was set for December 1, 1998 in this Court.

The jury found Defendant guilty on both the conspiracy and the attempt counts. After the jury was discharged, Defendant requested an extension of the standard seven-day period in which to file any posttrial motions. Defense counsel also sought permission to interview the jurors. The Court granted Defendant until January 29, 1999 to file his motions, and also permitted counsel to interview the jurors. Counsel interviewed the jurors shortly thereafter, and those interviews revealed that the 1993 Kukui Plaza shooting incident had been brought up in the jury room. Sever-

al months later, defense counsel interviewed the jurors a second time. Defendant filed the instant Motion for a New Trial on June 18, 1999, more than six months after trial, and nearly five months after the extended motion deadline. On July 19, 1999, the government filed its opposition to Defendant's motion. The Court heard oral argument on July 28, 1999.[1]

### STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides, in relevant part, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.Proc. 33. A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Rush,* 749 F.2d 1369, 1371 (9th Cir.1984). The burden of justifying a new trial rests with the defendant. *See United States v. Shaffer,* 789 F.2d 682, 687 (9th Cir.1986). The decision to grant a new trial is within the sound discretion of the trial court. *See United States v. Love,* 535 F.2d 1152, 1157 (9th Cir.1976), *cert. denied,* 429 U.S. 847, 97 S.Ct. 130, 50 L.Ed.2d 119 (1976).

Federal Rule of Evidence 606 provides, in relevant part:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed.R.Evid. 606(b).

### DISCUSSION

**I. Non–Disclosure of Material Information During Voir Dire**

Defendant first argues that a new trial is necessary because juror Pataia Timoteo failed to honestly answer a material question during voir dire. The Court disagrees, and finds that this is an insufficient basis upon which to grant a new trial.

A fair trial depends upon an impartial trier of fact, including a jury that is "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "Examination or voir dire of prospective jurors protects a criminal defendant's Sixth Amendment

---

1. At the hearing, the Court specifically asked the parties if they wanted an evidentiary hearing in connection with this motion, and both answered in the negative, stating that they wished to rely on the declarations submitted. The Court notes that two sets of declarations were submitted in connection with this hearing, the first executed in May and submitted by Defendant, and the second executed in July and submitted by the government. The Court finds that the jurors gave more thought to the second set of declarations, and that the second set is the more accurate and credible of the two (accordingly, reference hereafter to the declarations will be to the second declarations unless otherwise indicated). The Court finds this to be particularly true with respect to juror Timoteo, who had a more specific recollection of the pertinent events after giving more thought to the statements contained in his original declaration. Defense counsel argues that she first telephoned the jurors in February, and since they had from February to May to think about the matter, the first set of declarations should be given the most weight. However, as defense counsel acknowledged, there are no declarations to reflect those February calls, and the Court seriously doubts that the jurors gave any thought to the matter between February and May. In any event, any conversations in February would have been over two months after the trial, and therefore likewise susceptible to memory problems.

right to an impartial jury." *United States v. Boise,* 916 F.2d 497, 504 (9th Cir.1990). When a juror intentionally answers voir dire questions incorrectly, or deliberately fails to disclose information during voir dire by not responding to a question, the defendant's Sixth Amendment right to an impartial and indifferent jury may be compromised. "The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent jurors. The bias or prejudice of even a single juror [violates a defendant's] right to a fair trial." *Dyer v. Calderon,* 151 F.3d 970, 973 (9th Cir.1998), *cert. denied,* 119 S.Ct. 575 (1998).

The Supreme Court has explained the principles behind a party's right to a new trial on the ground of undisclosed juror bias during voir dire. In *McDonough,* the Supreme Court stated:

> One touchstone of a fair trial is an impartial trier of fact—a jury capable and willing to decide the case solely on the evidence before it. Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

*Id.* at 554 (internal citations and quotation marks omitted). The Supreme Court went on to state that, in order to obtain a new trial, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556.

■ Here, the Court finds that the first prong of this test has not been satisfied. Defendant alleges that Mr. Timoteo failed to honestly disclose his knowledge of Defendant and of the shooting incident when questioned on voir dire. However, based upon Mr. Timoteo's July 12, 1999 declaration, the Court finds that this is not the case. Mr. Timoteo stated in his declaration:

> I made the statement in paragraph 3 of my earlier declaration that "at the beginning of jury selection, before the questioning began, I looked at Mr. Saya, remembered his name and face and that he was the same person who had been shot in the incident at Kukui Plaza." I have thought about this statement a lot more and I can say now that, when the jury was being chosen, I did not recall anything about Robin Saya. It was when the evidence was coming in, that I recalled seeing Robin Saya's face on t.v. When the evidence came in about Robin Saya's girlfriend either being dead or being killed (I cannot recall which), I then wondered if there was any connection between the girlfriend and the Kukui Plaza incident.

Timoteo Decl. at 1. The Court notes that Mr. Timoteo's first declaration is dated more than five months after the close of trial, and understandably, his memory has dimmed and he was possibly confused when giving his declaration. The Court is satisfied that, based upon his second declaration, Mr. Timoteo did not intentionally conceal material information during voir dire.

"[A]n honest yet mistaken answer to a voir dire question rarely amounts to a constitutional violation[.]" *Dyer,* 151 F.3d at 973; *see also McDonough,* 464 U.S. at 849–50 ("To invalidate the result of a three-week trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give."). Simple forgetfulness "does not indicate lack of impartiality ... [and does not fall] within the scope of dishonesty as defined by *McDonough.*" *United States v. Edmond,* 43 F.3d 472, 474 (9th Cir.1994). The foregoing cases make clear that, although Mr. Timoteo was mistaken when he indicated that he had no

knowledge of Defendant, such answers were not "dishonest" as defined by *McDonough*. Accordingly, the Court finds that the first prong of the *McDonough* test has not been satisfied. Because this threshold requirement has not been met, the Court need not address the second requirement. *See Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1062 (9th Cir.1997); *Edmond*, 43 F.3d at 474 n. 1. Therefore, the Court cannot grant Defendant's motion on this ground.

## II. *Implied Bias*

■ Defendant next argues that, even if Mr. Timoteo is found to have answered the questions during voir dire honestly, Defendant is still entitled to a new trial due to Mr. Timoteo's "implied bias." The Court disagrees.

To support its position, Defendant cites cases in which the Ninth Circuit granted a new trial on the basis of implied bias.[2] However, as the government points out in its opposing brief, this case is distinguishable from those cases. The Ninth Circuit recently addressed the concept of implied bias and found that it should be presumed only in "extraordinary cases." *Dyer*, 151 F.3d at 981. The court observed that the kinds of circumstances that give rise to a finding of implied bias include "a revelation that the juror is a close relative of one of the participants in the trial or the criminal transaction, or [when] the juror was a witness or somehow involved in the criminal transaction." *Id.* at 982. In *Tinsley v. Borg*, the Ninth Circuit discussed several situations where bias might be presumed or implied: (1) "where the juror is apprised of such prejudicial information about the defendant that the court deems it highly unlikely that he can exercise independent judgment even if the juror states he will," (2) "[t]he existence of certain relationships between the juror and the defendant," (3) "where a juror or his close relatives have been personally involved in a situation involving a similar fact pattern," and (4) "where it is revealed that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial ... or that the juror was a witness or somehow involved in the [underlying] transaction." 895 F.2d 520, 528 (9th Cir.1990), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991).

Here, although Mr. Timoteo might be considered a witness to the "aftermath" of the Kukui Plaza incident, there is no allegation that he was in any way involved in or witnessed the transaction(s) at issue in this case, namely drug trafficking. The fact that he had some knowledge of the Kukui Plaza shooting, by itself, does not represent the type of "extraordinary case" referred to by the Ninth Circuit in its discussion of implied bias.

Although Defendant cites two Ninth Circuit cases to support his position that the Court should find implied bias in this case, the Court notes that in both of the cases cited, the Ninth Circuit refused to find implied bias. *See, e.g., Coughlin*, 112 F.3d at 1052 (court found no implied bias where juror had been involved in extensive criminal and civil litigation, some of which dealt with analogous legal theories); *Tinsley*, 895 F.2d at 520 (court found no implied bias even though juror in rape trial had failed to disclose that she counseled a rape victim for a year-and-a-half period and had testified in that victim's trial). Moreover, in the rare cases in which the Ninth Circuit has been willing to find implied bias, the circumstances were much more compelling than those present here. *See, e.g., Dyer*, 151 F.3d at 981–84 (implied bias found where juror had failed to disclose that her brother had been killed in a way which was very similar to the way the defendant was accused of killing his victims); *United States v. Eubanks*, 591 F.2d 513, 517 (9th Cir.1979) (implied bias found where juror in heroin conspiracy trial failed to disclose on voir dire that two of

2. The Court notes that, as the government points out in its opposing brief, the United States Supreme Court has not yet adopted the doctrine of implied bias.

his sons were serving prison terms for heroin-related crimes); *United States v. Allsup,* 566 F.2d 68, 71–72 (9th Cir.1977) (court found implied bias where two prospective jurors in a bank robbery trial were employees of the bank that was robbed, concluding that they had a reasonable apprehension of violence which created a substantial probability that they could not be impartial).

Because the Court finds that the "extreme" or "extraordinary" circumstances necessary to find implied bias are not present here, the Court rejects Defendant's motion on his ground.

### III. *The Extraneous Information Introduced Did Not Prejudice Defendant*

Defendant next argues that a discussion by at least three of the jurors during deliberations that Defendant was connected to the Kukui Plaza shooting incident constitutes improperly considered extraneous prejudicial information that requires a new trial. The Court disagrees with Defendant.

■ The Sixth Amendment requires that a jury verdict be based only on the evidence produced at trial. *See Turner v. Louisiana,* 379 U.S. 466, 472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). "When a jury is exposed to facts that have not been introduced into evidence, a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to the extraneous information." *Dickson v. Sullivan,* 849 F.2d 403, 406 (9th Cir.1988). Should a juror communicate extrinsic facts about the defendant to the other jurors, that juror essentially becomes an unsworn witness within the meaning of the Confrontation Clause. *See Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir.1997), *cert. denied,* 522

U.S. 1008, 118 S.Ct. 586, 139 L.Ed.2d 423 (1997); *Lawson v. Borg,* 60 F.3d 608 (9th Cir.1995). Jury misconduct is evident where even one juror's vote was improperly influenced by extrinsic information. *See Dickson,* 849 F.2d at 408.

■■ "Federal Rule of Evidence 606(b) prohibits juror testimony about the deliberative process or subjective effects of the extraneous information. Juror testimony is, however, admissible as to objective facts bearing on extraneous influences on the deliberation process." *Hard v. Burlington N.R.R.,* 812 F.2d 482, 485–86 (9th Cir.1987) (internal citation omitted).[3] Stated differently, Federal Rule of Evidence 606(b) does not preclude juror testimony regarding whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *See* Fed.R.Evid. 606(b). To obtain a new trial, Defendant must show that "the jury obtain[ed] or use[d] evidence that ha[d] not been introduced during trial," and that there is "a reasonable possibility that the extrinsic material could have affected the verdict." *Dickson,* 849 F.2d at 405.

### A. *Extraneous Information*

■ Extraneous prejudicial information invariably refers to the jury's consideration of prejudicial information that was not admitted into evidence. Extraneous information may include such information as the defendant's criminal history, personal characteristics, or an alleged crime not introduced at trial. *See, e.g., Wood,* 114 F.3d at 1490 (juror informed other jurors of defendant's prior armed robbery conviction); *Dickson,* 849 F.2d at 405 (deputy sheriff's statement that defendant had

---

**3.** Under this standard, portions of the declarations of jurors Timoteo, Andres, and Matsumura violate Rule 606(b) because they concern the internal deliberation process. Specifically, the portions which state that the discussion of the Kukui Plaza incident did not affect their decisions are inadmissible. *See United States v. Rohrer,* 708 F.2d 429,

434 (9th Cir.1983) ("Evidence concerning a jury's deliberations or a juror's reasoning are [sic] inadmissible to impeach a verdict. Rule 606(b) is designed to prevent precisely this kind of pressure on jurors.") (citations omitted). Accordingly, those portions must be disregarded.

"done something like this before" was extraneous information); *Hard,* 812 F.2d at 485–86 (juror told other jurors about defendant's settlement practices, including payment of injured employees' medical expenses); *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979) (jurors looked at official court file that law clerk had inadvertently left in the jury room).

Here, the Court finds that information concerning the Kukui Plaza incident is precisely the type of information which constitutes "extraneous" information. Information surrounding the Kukui Plaza incident was not introduced at trial, and as such, Defendant had no opportunity to address any negative inferences that might arise from this incident. Therefore, the only remaining question is whether there is a "reasonable possibility" that the introduction of this extraneous material during jury deliberations could have affected the verdict.[4]

### B. *Reasonable Possibility Standard*

 As noted above, "[a] defendant is entitled to a new trial when the jury obtains or uses evidence that has not been introduced during trial if there is 'a reasonable possibility that the extrinsic material could have affected the verdict.'" *Dickson,* 849 F.2d at 405. In order to overcome the presumption of prejudice arising from the introduction of extraneous evidence, the opposing party must prove beyond a reasonable doubt that the introduction of the evidence was harmless. *See id.*

### 1. *The Bayramoglu Factors*

 There are several factors that the Ninth Circuit takes into consideration

when determining the effect of extraneous information. These factors include:

(1) whether the extrinsic material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the jury discussed and considered it; (4) whether the extrinsic material was introduced before a verdict was reached, and if so, at what point in the deliberations it was introduced; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict.

*Bayramoglu v. Estelle,* 806 F.2d 880, 887 (9th Cir.1986); *see also Wood,* 114 F.3d at 1492 n. 10. "While instructive, none of these factors should be considered dispositive." *Jeffries v. Blodgett,* 5 F.3d 1180, 1190 (9th Cir.1993), *cert. denied,* 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

 The Court finds that while the juror misconduct in this case was serious, it does not rise to the level of that found in other cases where a new trial was warranted.

The first *Bayramoglu* element has been satisfied, in that the Kukui Plaza incident was mentioned during jury deliberations.

The second *Bayramoglu* element deals with the length of time the extraneous information was available to the jury, and is similar to the fourth factor, which focuses upon when the extrinsic material was introduced. Mr. Matsumura's declaration states:

I believe it was prior to the jury reaching the verdict but it is possible that it might have been after we reached a

---

4. In opposing Defendant's motion for a new trial, the government argues that, since the jurors in question knew of the Kukui Plaza incident prior to trial, the incident does not constitute "extrinsic evidence." To support this proposition, the government cites *United States v. Keating,* 147 F.3d 895, 900–01 (9th Cir.1998), which draws a distinction between jurors who have knowledge of extrinsic information prior to trial and those who learn of

this information during deliberations. However, what the government fails to address is the fact that the foreperson who instructed the three jurors not to consider the Kukui Plaza incident evidently heard their limited discussion, and no representation has been made that the foreperson was aware of the incident before it was mentioned during deliberations.

verdict during the "downtime" when we were waiting for everyone to get together for the announcement of the verdict, somebody mentioned or raised a question as to where Carol fit into the picture.

Matsumura Decl. at 1. Because the Court does not know when the extraneous information was introduced, the second and fourth factors are neutral.[5]

The Court next finds that the extent to which the jury discussed and considered the Kukui Plaza incident was minimal, and therefore the third element weighs against granting a new trial. The declarations of jurors Timoteo, Matsumura, and Andres all support this conclusion. Mr. Timoteo's declaration states that he does not recall any other jurors talking about the Kukui Plaza incident. *See* Timoteo Decl. at 2. Mr. Matsumura's declaration states that the discussion regarding the Kukui Plaza incident "lasted around thirty seconds," and also points out that the "jury foreperson said that this information or incident had no bearing on jury deliberations." Matsumura Decl. at 2. Finally, the declaration of Mr. Andres indicates that he "did not tell any of the other jurors about [his] recollection," and also states that he "had no knowledge at the time Mr. Matsumara [mentioned the Kukui Plaza incident] and to this day continue[s] to have no knowledge as to whether or not Robin Saya was actually involved or present at the shooting." Andres Decl. at 1. Jurors Matsumara and Timoteo also indicated that they did not know if Defendant was involved in the Kukui Plaza incident. The foregoing suggests that exposure to the extraneous information was minimal.

Finally, as to "any other matters which may bear on the issue of the reasonable possibility of whether the introduction of extrinsic material affected the verdict," the Court finds that there are two such matters which should be addressed. The first of these deals with the understanding prior

to both of Defendant's trials that no mention would be made of the Kukui Plaza incident. However, notwithstanding this understanding, the Court finds that the brief mention of the Kukui Plaza incident during deliberations was harmless. Not only was the discussion brief, but the evidence suggests that after the incident was mentioned, there was no further discussion or speculation, and in fact, the jury foreperson instructed the other jurors that the incident was not to be considered in arriving at a verdict, and according to Mr. Matsumara, the jurors responded, "we know, we know." Moreover, the extrinsic material as to Carol Ching being shot has no relationship to the issues at trial, namely whether Defendant was involved in a drug conspiracy. Finally, it is significant that it was the Defendant who mentioned during trial that Carol Ching was connected to criminal activity. In her opening statement, Defendant's counsel stated:

Who is Robin Saya? He sits, as Ms. Nakakuni suggested, in his blue Polo shirt at the defense table. *He met Bunag through his girlfriend Carol. Carol's now dead. She died in '93, '94. She sold Bunag jewelry. Carol ran a gambling, gaming house in Chinatown. She was very close to Bunag.* I believe that's—the Adobo name comes from Bunag's love of this pork or chicken adobo. And Carol cooked adobo for him. The connection between Bunag and Robin Saya is through Carol.

Transcript of Proceedings, December 2, 1998 at 35 (emphasis added). This statement to the jurors actually decreases the possibility of any prejudice from the discussion of the Kukui Plaza incident, since it is possible that Ching was the target of the shooting, rather than Defendant, since Ching was involved in criminal activity. Moreover, disclosing that Defendant's girlfriend had died in 1993 or 1994 might have led to the rekindling of the jurors' memory

---

**5.** The Court notes that deliberations commenced one afternoon and the verdict was rendered the following afternoon, with deliberations lasting approximately seven hours, which is a relatively ordinary time of deliberation.

of the incident. More importantly, as stated earlier, all three jurors did not know whether Defendant was even involved in the Kukui Plaza incident.

The second matter worthy of mention is the exclusion of a prospective juror for cause based upon her knowledge of the Kukui Plaza incident. Although the Court did excuse that prospective juror, its reasons for doing so were far more extensive than the juror's knowledge of the Kukui Plaza incident. First, the Court noted the juror knew about inadmissible evidence. More importantly, the juror knew about Defendant's first trial. As she stated during voir dire, she went to the library to do research on Defendant after she received her jury summons. She also indicated that she had read about the Kukui Plaza incident, remembered that Defendant was connected with drugs, thought he was "not a good person," and felt that she might not be able to be fair. She went on to state that "in the back of my mind there's something." In light of these factors, the juror was excused. *See* Def.'s Mot. for New Trial, Exh. C at 78–86. This is not the case with jurors Timoteo, Matsumura, and Andres. There is nothing to suggest that these jurors were not fair during deliberations, and in fact, the evidence suggests, as the Court has repeatedly noted, that the discussion of Kukui Plaza and the significance of that discussion was minimal.

The Court also notes, as discussed below, that the evidence produced against Defendant at trial was overwhelming, and rendered the extraneous information insufficiently prejudicial.

The Court finally notes that, in many cases where the Ninth Circuit found that a new trial was warranted, the extraneous information was much more prejudicial than it is in this case. For example, in *Dickson*, the Ninth Circuit was faced with a situation where a deputy had stated in the presence of several jurors that the defendant had "done something like this before." 849 F.2d at 407. In finding that a new trial was warranted, the Ninth Circuit stated that:

Evidence of prior offenses is likely to prejudice a defendant even where the defendant has the opportunity to rebut the evidence and take other ameliorative steps. Our cases have recognized that the danger of prejudice to the defendant is exacerbated where the prior offense is similar to the offense being tried.

*Id.; see also Wood*, 114 F.3d at 1490 (new trial granted in murder case where extraneous information dealt with defendant's prior armed robbery conviction); *Keating*, 147 F.3d at 902 (new trial warranted where extraneous information received by jury in federal trial dealt with defendant's conviction in state court based on same events); *Lawson*, 60 F.3d at 608 (extrinsic evidence was a juror's statement during deliberations that he had talked to several people who knew the defendant and they all said that the defendant was violent). Additionally, the United States Supreme Court found that a new trial was unnecessary under even more extreme circumstances than those present in the case at bar. *See Patton v. Yount*, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (refusing to grant a new trial where several jurors in the defendant's second trial had knowledge of his prior conviction in the first trial for the same crime).

Based on the foregoing analysis, the Court finds that the *Bayramoglu* factors strongly weigh against granting a new trial.

### 2. *The Jeffries Factors*

■ The Ninth Circuit has also outlined several factors to be considered in determining whether the government has proven beyond a reasonable doubt that the introduction of the extraneous information was harmless. In *Jeffries v. Wood*, the Ninth Circuit stated:

Various factors might nonetheless suggest that the potential prejudice of the extrinsic information was diminished in a particular case and therefore that the extrinsic evidence did not substantially and injuriously affect the verdict.

These factors include: whether the prejudicial statement was ambiguously phrased; whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; whether a curative instruction was given or some other step taken to ameliorate the prejudice; the trial context; and whether the statement was insufficiently prejudicial given the issues and evidence in the case.

114 F.3d at 1491–92 (footnotes omitted).

Here, the Court finds that these factors weigh against granting a new trial as well. As to the first factor, the Court finds that the information conveyed was somewhat ambiguous. Although the jurors in question briefly discussed the Kukui Plaza incident, there appears to have been no mention of Defendant's involvement in criminal activity, but instead, simply an expressed curiosity about whether Defendant's girlfriend was connected to the incident. The jurors did not even know if Defendant was connected to the shooting. *See* Timoteo Decl. at 2; Matsumura Decl. at 1; Andres Decl. at 1. This does not represent the type of prejudice that the Ninth Circuit has expressed concern about in cases where it found that a new trial was warranted.

The second factor also weighs against granting a new trial, although not entirely. The jury had already learned, at trial, that Carol Ching was: (1) Defendant's girlfriend, (2) deceased in 1993 or 1994, and (3) involved in criminal activity. Thus, any aspect of the Kukui Plaza incident dealing with these things would be somewhat cumulative. On the other hand, the parties had agreed that evidence regarding the manner of Carol Ching's death was not to be introduced at either trial. Thus, evidence that Ching had been involved or killed in the Kukui Plaza incident was new evidence.

As to the third factor, the Court did not offer a curative instruction because it was unaware that the jurors had discussed the extrinsic evidence. However, the jury foreperson did instruct the jurors not to consider the extrinsic evidence, and they responded, "we know, we know." *See* Matsumura Decl. at 2.

The fourth factor weighs in favor of a new trial because the incident was discussed in the jury room, and there is no evidence which suggests that the discussion was not overheard by the foreperson.

Finally, the Court finds that the discussion of the Kukui Plaza incident was insufficiently prejudicial, given the brief duration of the discussion and the overwhelming evidence produced at trial, as well as the fact that the main issue in the case was whether Defendant was involved in a fifty-pound "ice" conspiracy with Bunag and others. The government's proof was very substantial, including recorded conversations between Defendant and Bunag, as well as Bunag's testimony that Defendant went to Bunag's apartment, delivered $230,000 to Bunag to buy "ice," and went with him to the Hawaii Prince Hotel and Ala Moana Hotel. Furthermore, Bunag's testimony was corroborated by FBI Special Agent Daniel Kelly, HPD Detective Michael Church, and HPD surveillance officers.

In light of the foregoing analysis, the Court concludes, beyond a reasonable doubt, that the discussion of the Kukui Plaza incident by the jury was harmless. Accordingly, the Court rejects Defendant's motion on this ground.

## IV. *Waiver*

The final issue that the Court must address is the government's argument that there was a waiver in this case. In its opposition to Defendant's motion, the government asserts that, since Defendant did not insist upon voir dire questions specifically relating to the Kukui Plaza incident, he waived his right to claim that the jury was poisoned by knowledge of that incident. In support of its position, the government relies on the Ninth Circuit's decision in *Keating*. In *Keating*, the Ninth Circuit stated that such a waiver theory "may have some merit as applied to

those jurors who had pretrial knowledge" of the incident at issue. 147 F.3d at 899.

Here, the Court rejects the government's waiver argument for two reasons. First, the Court is not convinced that the voir dire questions put to the potential jurors in this case were insufficient to discover any knowledge those jurors may have had regarding the Kukui Plaza incident. The jurors were asked questions about their knowledge of Defendant, as well as their ability to be fair. When it appeared during voir dire that a potential juror had knowledge of the Kukui Plaza incident, defense counsel questioned that juror in more detail. Accordingly, the Court is not persuaded that Defendant waived his right to object to a juror's knowledge of the incident.

Second, even if the voir dire questions were insufficient, the Court still finds that there was no waiver. The *Keating* court, in its waiver discussion, drew a distinction between jurors who had pretrial knowledge of the defendant's state court conviction and those who learned of it during deliberations. With respect to the latter, the *Keating* court stated:

> Even if the defendants tacitly approved jurors with pretrial knowledge, they did not waive their Sixth Amendment rights to confront those who testify against them and to conduct cross-examination. We reject the government's waiver argument as it applies to any juror who learned of [defendant's] state conviction during the federal trial.

147 F.3d at 900 (internal quotation marks omitted). The Ninth Circuit found that when jurors with pretrial knowledge of certain matters discuss those matters with other jurors who do not have such pretrial knowledge, the former become "witnesses," whom the defendant does not have the opportunity to cross examine. Here, as the Court has already pointed out, at least one other juror, namely the foreperson, heard the discussion about the Kukui Plaza incident. Accordingly, the Court finds that the jurors with pretrial knowledge of the Kukui Plaza incident were essentially "unsworn witnesses," and therefore rejects the government's waiver argument.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for a New Trial.

IT IS SO ORDERED.